[No. 7878.]

## Wilson et al v. Wilson.

1. *Executors and Administrators—Widow's Allowance*—Under Sec. 7206 of the Revised Statutes the widow's allowance provided for by secs. 7223, 7225 is a preferred claim against the estate of the husband, not an interest in it. The purpose of the statute is to secure support to the widow and children during the period of administration, and the prolonged litigation which sometimes ensues.

2. ——*Effect of Marriage Settlement*—The widow's allowance is not an inheritance, and is not taken away by the general provisions of an ante-nuptial agreement between the husband and wife that "neither shall inherit from the other."

3. ——*Jurisdiction of the Court*—In a proceeding for the adjustment of the widow's allowance, neither the county court sitting in probate, nor the district court in an appeal therefrom, have jurisdiction to set aside or nullify an ante-nuptial settlement between the widow and her deceased husband.

4. Contracts—*Construed—Marriage Settlement*—A marriage settlement provided that "neither party shall inherit from the other", but all property of either shall "descend to the heirs at law * * * in the same manner as if the marriage had never been solemnized", and the survivor "will not claim any interest in the estate of the deceased party by virtue of said marriage". *Held* to import merely that neither should, as survivor, claim any distributive share in the estate of the other; that it had not the effect to exclude the widow from the allowance provided for her by the statute. This interpretation of the contract was held to be fortified by later provision therein, to the effect that a reasonable portion of the husband's estate, consisting of income property should be set apart and held in trust by his executor, the income of which should be devoted to the support of the wife. It was further *held* that the context of the document, as a whole, afforded no evidence that the widow should be deprived of her statutory allowance.*

5. Trustees—*Testamentary—Appointment Of*—A marriage settlement provided that if the wife should survive the husband a reasonable share of his estate, consisting of income property, should be "set apart and held in trust by his executors", the income of which should be devoted to the support of the widow. The husband died intestate, the wife surviving him. *Held* that the trust under this provision could not be declared until the lapse of the year allowed for administration.

6. Practice in Supreme Court—*A Correct Judgment Upon False Reasoning*, must be affirmed.

*Syllabus by Bailey, J.

*Error to Denver District Court.*—Hon. James H. Teller, Judge.

Messrs. Whitford & May, Messrs. Sherman & Stokes, Mr. H. B. Tedrow, Mr. Carl H. Cochran, for plaintiffs in error.

Messrs. Ritter & Marshall, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court:

William E. Wilson and Jennie F. Wilson, defendant in error, were married in June, 1891. On April 3rd, 1911, he died. There were no children of this union. Wilson had, however, previously been married, and plaintiffs in error are his heirs at law, children, issue of the previous marriages, and grandchildren, one a minor, appearing by guardian. On the day preceding the marriage, an antenuptial agreement in writing duly acknowledged was entered into between them, by which each released all claim whatsoever to the property of the other, which either owned at the time, or which they might thereafter acquire, with the same effect as though said marriage had never been had or solemnized, and agreed that neither should inherit from the other, except that it was provided that in case the wife survived the husband there should be sufficient property set aside to maintain her in the same manner that she had been maintained during their married life. In the meantime each party was to have full power of disposition of their separate property independently of the other. The exact provision of the contract above referred to is as follows:

"That neither party shall inherit from the other, but that all the property and estate of either party hereto upon his or her death shall descend to the heirs at law and next akin of the party so dying, subject to any bequest or devise thereof in the same manner as if the marriage had never been solemnized, and the survivor shall not and will

not claim any interest whatever in the estate of the deceased party by virtue of said marriage."

This controversy began in the county court, where the widow was allowed the sum of $2,000.00, as her award out of the estate of the deceased husband, as provided by Sections 7223 and 7225, R. S. 1908. Certain objections to the award, answers and replies were filed in the county court, which were argued on appeal in the district court, and upon which plaintiffs in error moved for judgment setting the award aside. The district court overruled the objections, and permitted the widow's allowance to stand. The heirs bring the judgment here on error for review.

The only question which we shall determine is whether the award to the widow was properly made, assuming, for the purpose of this decision only, that the antenuptial contract is binding. We do not decide that question one way or the other, but leave it open for judgment, if it shall become necessary in the future to determine it, in an equitable action brought for that express purpose. It could not be properly determined by the county court sitting in probate. The district court held the antenuptial contract bad, on the ground that the deceased had not provided for the widow in compliance with its terms. The court was without authority in these proceedings to so determine. But its judgment if correct, without reference to the reasons given, must be upheld. The proceedings in probate were regular, and it is conceded that the widow is entitled to her allowance unless waived by the antenuptial agreement.

The statutory allowance to the surviving wife is a provision for her support, and is given independent of her distributive share in her husband's estate. While it cannot be treated as a debt against the estate, it is a claim to be preferred over legatees and distributees, and all other claims against the estate of her deceased husband, except debts due the United States, liens for taxes, and

vendors' and landlords' liens, necessary administration expenses and expenses of last sickness and funeral. 18 Cyc. pp. 373, 387-388, and cases cited.

Considering the special character of the widow's allowance, is it waived by such a general provision in an antenuptial agreement as ''the survivor shall not and will not claim any interest whatever in the estate of the deceased party by virtue of said marriage?'' The court below held that the statutory allowance to the widow is a claim against the estate of her deceased husband, and not an interest in it; that the ''interest'' contemplated by the agreement, means only an interest in the distributive portion of the estate; and that the general provisions of the antenuptial contract do not waive her right to the allowance. We concur in this view.

The purpose of the statute providing for the widow's allowance is to secure, to some extent at least, support to the wife and children during the period of administration, and is founded in part at least upon considerations of public policy. Ofttimes prolonged ligitation and grave uncertainties attend the administration of the distributive portion of an estate, and a statute making such an allowance confers a right of such special character that it should not be construed away under general and sweeping provisions, like those in the contract before us. To come to the conclusion that the widow's allowance is not affected by this agreement, one has but to examine that instrument as a whole, and it is only in this way that a correct estimate of its effect can be reached. The provision, ''It is further especially and mutually understood and agreed between the parties hereto, that neither party shall inherit from the other, but that all the property and estate of either party hereto upon his or her death shall descend to the heirs at law and next akin of the party so dying, subject to any bequest or devise thereof in the same manner as if the marriage had never been

solemnized,'' when followed by the words, ''and the survivor shall not and will not claim any interest whatever in the estate of the deceased party by virtue of said marriage,'' manifestly means that the survivor shall not claim any distributive share of the estate of the other party; that is, that neither party shall inherit from the other. The expression ''inherit'' naturally can refer only to that portion of the estate to be distributed according to the law of descent. It has, and can have, no possible reference to the matter of the widow's allowance, which does not go by inheritance. This view finds further support in the next clause of the agreement, which is as follows:

''It is however agreed and understood by the said William E. Wilson that a reasonable portion of his estate shall be set apart and held in trust by his executors consisting of income property or interest bearing notes, the interest or income from which, in case of his death before the death of the said Jennie N. Fish, shall be devoted to the support of said Jennie N. Fish, or as much of it as necessary to keep her in as comfortable a manner as she had enjoyed during their married life.''

This provision is in direct conflict with the preceding language, ''and the survivor shall not and will not claim any interest whatever in the estate of the deceased party by virtue of said marriage.'' The language quoted from the agreement making provision for the support of the wife, either nullifies the paragraph, ''and the survivor shall not and will not claim any interest whatever in the estate of the deceased party by virtue of said marriage,'' or modifies it, for it is manifest that the widow does have a right to claim an interest in the estate of the deceased, as it was expressly agreed that a reasonable portion of the estate should be set apart after his death for her support. It cannot, therefore, be fairly contended that the contract affords any evidence of an intention that the widow should be deprived of her allowance as fixed by

statute for her maintenance, during the period of administration. There is no express agreement of waiver, nor can such waiver be implied from the language used; indeed, there is no such implication at all. On the contrary, the provisions of the agreement harmonize with the idea that the widow should have support. This is emphasized by the fact that it is provided that the property to be set apart for the widow should be held in trust by the executors of the deceased. He made no will, and has no executors to hold property in trust for the use of the widow. As a consequence, she must wait until the year of administration is concluded before the trust can be declared, and may be compelled to institute suit to enforce it unless an amicable settlement is reached.

*In re Miller's Estate,* 143 Iowa, 120, 121 N. W. 700, the antenuptial contract there under consideration, after making certain provisions for the widow, contains this clause: "and this shall be all that she shall receive of the estate of said Isaac Miller." Commenting upon this provision, the court said:

"It (the contract) concludes with the general sweeping provision that the settlement made by the contract 'shall be all that she shall receive of the estate of said Isaac Miller.' * * * In a very proper sense the estate of Isaac Miller in which his widow would have been entitled to distributive share had no relinquishment been made consisted of the property belonging to him at the time of his death and remaining for distribution in accordance with his will or otherwise as provided by law after the payment of his debts and the charges and expenses of administration. The allowance to widow and children is one of the expenses of administration. It is not taken out of the estate which is to be distributed, but is to be satisfied before the amount of such estate can be ascertained. The fact that the widow was to have no interest in the estate under the contract would not, we think,

deprive her of the statutory provision for support during the period of administration. * * * 'It must be understood that contracts designed to divest the wife of the benefits of the statutes in her favor after the death of her husband, and especially a statute providing for a necessary support immediately following such death, must not be of doubtful interpretation, but specific and certain as to such intent. In general the provisions of the statute in this respect embrace interests not alone personal to the wife, but to the children, and in a sense to the public, and a law thus designed is to be guarded with caution.' *In re Estate of Peet,* 79 Iowa, 185. The widow's right to an allowance is in no sense an interest in the estate of her husband. * * * We reach the conclusion that there was nothing in the antenuptial contract precluding the court from making an allowance to the applicant.''

In *Pulling v. Durfee,* 85 Mich. 34, 48 N. W. 48, the antenuptial contract provided, ''The second party (widow) hereby agrees to release, and does release, all claim which, upon the death of the first party, she as his widow may have in his estate, whether in right of dower, or as her distributive share in the personalty, or otherwise, under the laws of the state. The second party makes this agreement for the purpose of substituting this present gift of money in lieu of all the property rights which such marriage, if entered into, may confer upon her under the law.'' The court says, with reference to this contract:

''The making of an allowance to the widow in no way interferes with or delays the settlement of the estate. Had provision been made by will for relator, 'in lieu of all claims for dower and her distributive share in the personalty or otherwise, under the laws of the State,' and had she expressly elected to take under the will, it could not be claimed that before distribution, and pending the settlement of the estate, she would not be entitled to an allowance under this statute. * * * In *Miller v. Step-*

*per,* 32 Mich. 194, 202, the court say: * ' * * 'Now, we understand the allowances provided for in chapter 156, Comp. Laws, to belong to the matter of administration of the estate, and to rest on higher grounds than the claims of distributees. They are quite distinct from distribution, and are inseparably connected with the course of settlement of the estate. They are grounded upon a policy not unlike that which allowed the widow her quarantine and reasonable estovers at common law, and in some measure are deemed suitable means to enable administration to be carried to that stage at which distribu- may be made;' * * * The agreement here was intended to bar relator's 'right of dower, and all of her right to share in the estate,' and cannot be extended to include statutory 'allowances pertaining to administration.' "

The following decisions, some directly, and all in effect, support the doctrine announced in the foregoing quotations from the Iowa and Michigan cases: *Lowe v. Lowe,* 163 Mo. App. 209, 146 S. W. 100; *Farris v. Coleman,* 103 Mo. 352, 15 S. W. 767; *Mahaffy v. Mahaffy,* 61 Iowa, 679, 17 N. W. 46; *King v. King,* 184 Mo. 99, 82 S. W. 101; see also 18 Cyc. 390.

In the case at bar the agreement certainly cannot be construed to preclude the widow from asserting any claim which she may have against the estate. If the widow had held the note of the deceased, it could not be fairly contended that she would not have a claim against the estate upon such indebtedness. The widow's allowance is a claim against the estate for support, pending administration, and is no more waived by the agreement in question than any other just claim would be.

Under all of the decisions of the courts which we have been able to find, a widow's allowance is not in the nature of an interest in an estate, it is not something which goes to the widow by descent; it is a preferred

claim against the estate. This is well declared in the case of *Claypool v. Jaqua,* 135 Ind. 499, 35 N. E. 285, where the court says:

"The widow's statutory claim to $500 is not an interest in the estate of the decedent, but is a preferred claim payable out of the personal estate, if sufficient for the purpose. If not, then the lands of the decedent shall be sold to pay it."

Upon a consideration of Section 7206, R. S. 1908, which reads as follows: "Third. All allowances to the widow, wife or orphans made as provided by law shall compose the third class." It is noted that the allowance to the widow by express statutory provision is made a preferred claim against the estate, just as in the Indiana case. This allowance is no part of the distributive share of the estate, but is rather, in a very just and proper sense, a charge or claim against the estate. It is, indeed, nothing more or less than a part of the costs of administration. *In re Estate of Peet,* 79 Iowa, 185, 44 N. W. 354; *Estate of Denis,* 67 Iowa, 110, 24 N. W. 746; *Miller v. Stepper,* 32 Mich. 194; *Bliss v. Livingston Probate Judge,* 149 Mich. 271, 112 N. W. 911; *Mahaffy v. Mahaffy, supra; In re Estate of Miller, supra.* The agreement under consideration does not even purport to release any claim at all which the widow has against the estate of the deceased husband, and none is thereby released. By the very terms of the contract itself it is disclosed that it was intended that the widow's support should come from the estate, and since no provision was made by the deceased to carry out this provision, it naturally follows that the widow has an absolute right to claim the allowance provided by statute, for in no other way could she secure the support which by the agreement it is plainly intended she should have.

While it is true that there is a diversity of opinion in the courts upon the construction of contracts like this, on

the point as to whether by general terms the widow's allowance may be relinquished, that cannot well be reconciled, yet it appears that the decisions which we have cited, especially the cases from Iowa and Michigan, from which liberal quotations have been made, state the better doctrine. The cases cited by counsel for plaintiffs in error are either distinguishable on the point in question from the case at bar by the express language of the contracts themselves, or are, in our view of the matter, against the weight of authority and the sounder reasons.

The judgment is affirmed.

CHIEF JUSTICE MUSSER and Mr. JUSTICE WHITE concur.