[No. 8068.]

DEEBLE ET AL. V. ALERTON.

1.  HUSBAND AND WIFE—*Separation Agreement*, does not deprive the wife of her right to the separate allowance provided by Rev. Stat. Sec. 7223, where such agreement contains no express renunciation thereof.   (170)·

The right of the widow cannot be taken away by presumption or construction.   (171)

*Semble*, a common law marriage entitles the widow to the allowance.   (169)

2.  EXECUTOR—*Power of the Court to Refuse Letters Testamentary.* The law is a jealous guardian of the estates of deceased persons, and when the appointment of the executor· named in the will of the decedent may endanger the estate, or lead to embarassment in the administration, it is within the power of the court, and is its clear duty, to commit administration to another, e. g. where the· executrix is bitterly hostile to the insane widow, and the estate is hardly of sufficient value to discharge the widow'.s allowance, and pay the debts of the deceased the appointment, as administrator, of the conservator of the insane widow, a man of high character, and a long-time friend of the parties, approved, as warranted by Rev. Stat. 7111.   (171, 172)

*Error to Montrose District Court.*—Hon. THOS. J. BLACK, Judge.

Messrs. CATLIN & BLAKE, for plaintiff in error.

Messrs. FINK & WOOD, and Mr. WALTER P. CROSE, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Henry Alerton of the county of Montrose, in this state, and Lizzie Alerton, had lived together as man and wife for a period of more than thirty years, after which time and on the 19th day of January, 1904, they entered into an agreement that each should live separate and

apart from the other, which agreement provided for the division of their property, and the property was divided accordingly.

After describing the property so divided, the agreement recites: "And in pursuance of this agreement it is further mutually agreed that said parties may live separately and apart from each other and reside in such place or places, family or families, and with such relations, friends or other persons, and to follow and carry on such trade or business as he or she may from time to time choose or think fit; that neither will at any time compel the other to live with him or her, or molest disturb or trouble the other for living separately and apart, nor sue, molest or trouble any other person whatsoever for receiving, entertaining or harboring each other; and except as hereinabove neither party shall or will at any time hereafter claim or demand from the other any money, jewels, plate, clothing, household goods, furniture or stock in trade, or any property whatever, which either now hath or may hereafter procure, or which may be devised or otherwise acquired by either." It was further agreed: "That each shall from and after this agreement pursue their own course and business, as though not married, and that neither shall be liable for the support or maintenance or debts of the other."

About one year after the execution of the agreement and division of property, Alerton executed his will in which and after reciting the said agreement, as to the separation and division of the property, and that he had no children of his own, he bequeathed all his property to the children of one George Reading, deceased, and appointed Sarah E. Reading, widow of the deceased George Reading, as executrix of his will, and directed that no bond be required from her as executrix. On November 3, 1912, Alerton died, and upon application, John Deeble

was appointed and duly qualified as administrator of his estate. Later, and on the 21st day of November, 1912, there was filed with the county court of Montrose county, the will of Alerton and a petition for probate. Appraisers of the estate were appointed under the proceedings in administration, and on the 9th day of December, a report of these appraisers was filed reciting specific property, and the value thereof, described as property allowed by law to the widow for herself and family, in the aggregate of $2,000. The record discloses that at the time of the appointment of Deeble as administrator, Lizzie Alerton had been adjudged insane, and that the said Deeble had been appointed conservator of her estate.

On the 10th day of December, 1912, Deeble as conservator of the estate of Lizzie Alerton, and certain creditors of Alerton, filed their joint protest against the appointment of Sarah E. Reading as executrix of the will, and asking that Deeble be continued as administrator. The basis of the protest and petition was, that Sarah E. Reading was unfit and incompetent to administer the estate of the deceased, and that she is hostile to the interests of Lizzie Alerton, insane, widow of the deceased Henry Alerton. The validity of the will does not seem to be questioned.

On the 20th day of December, there was filed a petition upon the part of Lizzie Alerton, insane, by Deeble, as conservator of her estate, claiming a widow's allowance in the said sum of $2,000. Upon the hearing the County Court denied the protest, admitted the will to probate and confirmed the appointment of Sarah E. Reading as executrix, but ordered that she give a bond for the faithful performance of her duties as such executrix, in the sum of $5,000, and found that the article of separation is binding upon the parties, and that Mrs.

Lizzie Alerton has nothing in the estate, at this time, as widow. Plaintiff in error appealed to the District Court and there the judgment of the County Court was affirmed.

The refusal of the court to allow the protest, or to continue Deeble as administrator, and the action of the court in refusing to grant the petition for a widow's allowance, are questions raised in this controversy.

It appears probable, that no marriage ceremony was ever solemnized as between Henry and Lizzie Alerton, but that they had lived together and were recognized as husband and wife for many years, and that Alerton so considered her, both in the separation agreement, and in the recitation in his will. The parties were never divorced. But there was a marriage certificate introduced in evidence showing the marriage of Alerton to Sarah E. Reading, the executrix of the will, in 1907. But the testimony shows that Alerton made his home at least, at the same house with Lizzie Alerton, up to the time of his death.

The court and counsel seem to have treated the marriage to Mrs. Sarah E. Reading as a nullity, and Lizzie Alerton as having been the wife of Henry Alerton at the time of his death. The learned judge in his written opinion speaks of these matters in the following language:

"This case is decided wholly upon what to the mind of the court the separation agreement shows on its face, and the will and subsequent marriage of Henry Alerton are mentioned as matters of corroboration. It is therefore considered and adjudged by the court that by reason of said separation agreement Lizzie Alerton has no interest in the estate of Henry Alerton, deceased, and that she is not entitled to a widow's allowance."

Upon the question, whether in view of the agreement of separation and division of the property, the

widow, Lizzie Alerton is entitled to a widow's allowance, there appears to be a division of opinion in this regard among the authorities, yet the question seems to be settled in this jurisdiction in favor of such allowance. In the case of *Wilson v. Wilson,* 55 Colo. 70, 132 Pac. 67, Mr. Justice Bailey entered into a very careful examination of our statutes, and the authorities generally upon this subject. While that case involved an anti-nuptial agreement, yet the principle there involved is not different from that of the case at bar. It will be noted that in the agreement in this case, there is no specific waiver of the right of Lizzie Alerton to claim a widow's allowance. In the case just cited it was held by this court that the widow's allowance is not a distributive part of the estate, and is nothing more nor less than a part of the costs of administration.

It is not contended in this case that Lizzie Alerton was not the lawful wife of Henry Alerton at the time of his death. At his death she then became his widow with all rights as such, provided by the statutes. The question of her right as a widow to inherit is not involved in this proceeding and therefore not determined.

It was said in the case of *Wilson v. Wilson, supra,* "Under all of the decisions of the courts which we have been able to find, a widow's allowance is not in the nature of an interest in an estate, it is not something which goes to the widow by descent; it is a preferred claim against the estate. This is well declared in the case of *Claypool v. Jaqua,* 135 Ind. 499, 35 N. E. 285. Upon a consideration of section 7206 R. S. 1908, which reads as follows: 'Third. All allowances to the widow, wife or orphans made as provided by law shall compose the third class.' It is noted that the allowance to the widow by express statutory provision is made a preferred claim against the estate, just as in the Indiana

case. This allowance is no part of the distributive share of the estate, but is rather, in a very just and proper sense, a charge or claim against the estate. It is, indeed, nothing more or less than a part of the costs of administration.''

The divinely inspired and divinely commanded institution of marriage has ever had the favor of the law. The law has constantly before it this sacred relationship upon which rests primarily the home, society, country, and the cause of humanity. The law curbs the will of and prescribes a limit to bequests of testators where such relationship exists. The ''widow's allowance,'' provided by our statute, is a gracious and deserved tribute of the law to wifehood. It is a first charge upon estates, and so made to provide for the comfort and sustenance of the widow and children, pending administration and before distribution. It therefore cannot be a part of that which is to be distributed. It is designed not only as a protection for the widow and children as against want or humiliation, but a protection for the State as well. It is a right that cannot be waived by presumption, assumption or construction. If it may be waived at all, it must be in terms that do not admit of doubt. In the absence of such a waiver, where the relationship of widow exists, the right is corresponding.

In the matter of confirming the appointment of Mrs. Reading as executrix, and discharging Deeble as administrator, it appears that Mrs. Reading can have no interest in the estate under the will or otherwise, and that from the circumstances of her relationship with Alerton in his life-time, together with the express proof of her antagonism toward Lizzie Alerton, the insane widow, she ought not in fairness and justice be continued as executrix. Particularly so when we consider the further fact that the estate appears not to be of sufficient value

to pay its indebtedness, including the widow's allowance, and that for such reason, there is scarcely a possibility that any property will remain for distribution, either under the terms of the will or otherwise. Further, it appears that Deeble is a man of high character and a long-time friend of Alerton and his wife. Under these circumstances it would seem to have been the duty of the court under its statutory power, Sec. 7111 Rev. Stat. 1908, to have allowed the protest and to have continued Deeble as administrator of the estate.

It is the policy of courts in so far as it may be within the limits of the law, and consistent with the interests of the estate, to carry out the expressed will of the testator. But a testator cannot foresee all circumstances and conditions that may afterward arise, and when such do arise as appear to endanger the estate of the deceased or to prevent its proper administration, it is the clear duty of the court, and within its undoubted power, to grant the necessary and proper protection. The law is a jealous guardian of the estates of deceased persons in the matter of their administration. To this end it had conferred upon courts of probate vast powers and wide discretion, though at the same time it has provided the almost unlimited right of review by appellate courts of the acts, conduct, orders and decisions of these courts in such matters.

As before stated, the question of distribution under the will is not before us.

The judgment is reversed with instructions to the court to enter a judgment in harmony with the views herein expressed.

MUSSER, C. J. and GARRIGUES, J., concurring.