## No. 11,607.

COLORADO WHEAT GROWERS ASSOCIATION *v.* THEDE.

Decided January 24, 1927.   Rehearing denied February 21, 1927.

Action for damages for breach of a marketing contract. Judgment for defendant.

### *Affirmed.*

1. CONTRACTS—*Marketing—Validity.*   Standard co-operative market agreements unauthorized by law, have been held void as in contravention of public policy.   Such contracts have been held valid where made after the statute authorizing them was passed, if in compliance therewith, and made by and between an association formed under the act and one of its members.

2. COURTS—*Decisions.*   The legal effect of a court decision is limited to the facts in the record.

3. MARKETING ASSOCIATIONS—*Authority.*   An association organized and doing business under the general corporation laws of the state, is not entitled to operate as a co-operative marketing association unless and until it brings itself within the provisions of the law on that subject.

4. STATUTES—*Construction.*   In construing the Co-operative Marketing Act, it is held that the court is not permitted to eliminate an entire section.

5. *Construction.*   A statute referring to ''all contracts heretofore made'' means contracts made prior to the time the act became effective.

6. MARKETING CONTRACTS—*Parties.*   A corporation is not, as a matter of public policy, entitled to make a marketing contract without first complying with the statutes on that subject.

7. *Corporations—Authority.*   Authority of a company to make marketing contracts, is limited to those organized under the Co-operative Marketing Act, or that have accepted and complied with its terms.

8. PUBLIC POLICY—*Legislative Power.*   The legislature has power over questions of public policy of the state.

9.   MARKETING ASSOCIATIONS—*Contracts.* An instrument in form a stand-
     ard marketing contract, entered into after the Co-operative Market-
     ing Act took effect, but with an association not organized thereunder
     and which at the time it entered into the agreement with its member,
     had not complied with or taken advantage of the legislative provi-
     sions, is void.

*Error to the District Court of the City and County of
Denver, Hon. Charles C. Butler, Judge.*

Messrs. PONSFORD, PENDER & LARWILL, for plaintiff in
error.

Mr. T. H. HOOD, for defendant in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

COLORADO Wheat Growers Association sued Thede,
one of its members, for damages for alleged breach of
contract and lost.   The association brings the case here
for review.

In September, 1922, plaintiff was incorporated in this
state as a co-operative marketing association, without
capital stock and not for profit, and then adopted its by-
laws.  March 30, 1923, the Colorado act providing for
co-operative marketing associations became effective.
L. 1923, ch. 142.  December 6, 1923, Thede became a mem-
ber of the association, and at the same time agreed to de-
liver to it, all of his 1924 and 1925 wheat for marketing
when most profitable to its members.   The agreement
provided for liquidated damages in the sum of twenty-
five cents per bushel, on all wheat sold by the defendant
contrary to contract, and for attorney's fees in case of
suit.   The agreement recites that it is one of a series of
interdependent contracts, similar in terms, made with
other members.   In its general form, it was a standard
co-operative marketing contract.

In May, 1924, the association, pursuant to a majority vote of its members, in which Thede did not participate, brought itself under the provisions of the act of 1923, ch. 142, as authorized by section 27 thereof, by making and filing the duplicate statement and its articles of incorporation as therein required; these articles were called "Amended Articles." In October, 1924, Thede sold his 1924 wheat to a stranger to this suit, whereupon the association sued Thede under the liquidated damage clause of the contract, and for attorney's fees. The association marketed nothing but wheat in 1924.

1. The only defense interposed by Thede that we find it necessary to notice is that which relates to the illegality of the agreement because made with an association not then having complied with the provisions of the Co-operative Marketing Act of 1923.

As to standard co-operative marketing agreements, made before they were authorized by L. 1923, ch. 142, we have held them to be void as in contravention of public policy, because in restraint of trade or competition. *Burns v. Wray Co.,* 65 Colo. 425, 176 Pac. 487, 11 L. R. A. 1179; *Campbell v. People,* 72 Colo. 213, 210 Pac. 841; *Johnson v. People,* 72 Colo. 218, 210 Pac. 843; *Atkinson v. Colo. Wheat Growers Ass'n,* 77 Colo. 559, 238 Pac. 1117.

We later held such contracts to be valid in a case where there was a concurrence of the following conditions: the agreement was made after the 1923 act was passed; it was authorized by that law, and executed in compliance therewith; it was made by and between an association formed under such act, and a member of such association. *Rifle Potato Growers Ass'n v. Smith,* 78 Colo. 171, 240 Pac. 937.

2. The basis of the decision in the Rifle Potato Growers case, and the reason for the departure from the rule announced in the first line of cases, was the intervening 1923 statute, authorizing contracts of such nature with corporations or associations organized thereunder, or

with those that had adopted its provisions, which law was not in effect when the contracts litigated in the first cases were made. In particular, we pointed out in the Rifle case, that the law making body had exercised its right to declare a new public policy of the state; this act made legal the last designated classes of contracts thereafter executed, and attempted to legalize certain contracts made before. Like all judicial decisions, the legal effect of the Rifle case was limited to the facts in the record. Now we have a state of facts differing from those in all of our previous decisions.

3. The present action concerns an instrument, in form a standard marketing contract, entered into after the act took effect, but with an association not organized thereunder, and which, at the time that it entered into the agreement with its member, had not then taken advantage of the offer in section 27 of the act, to corporations and associations organized under previously existing statutes; the 1923 act allows them to be brought under its provisions and thus to partake of its advantages, by accepting its terms and adopting the restrictions as provided in section 27 thereof. At the time that the agreement was made, the company was operating under its 1922 charter. This is the only substantial difference between this and the Rifle case: Here, the association was incorporated and doing business or attempting so to do, under the general incorporation laws of the state, whereas, in the Rifle case it was organized and doing business under the Co-operative Marketing Act. The Rifle case having determined the validity of contracts of this character, the only question affecting its legality that remains to be decided is whether a corporation organized under the general laws, may enjoy the benefits of the 1923 Co-operative Marketing Act, unless and until it shall have first accepted its burdens and restrictions by compliance with section 27 thereof. For an answer we must first have recourse to the statute itself.

The word "association" is used repeatedly throughout the act and is defined as "any corporation organized under this act." L. 1923, ch. 142, p. 423, sec. 2 (c). The act pertains to two classes of corporations: first, those originally organized thereunder, and second, those that have adopted its provisions as provided in section 27, which reads: "Any corporation or association, organized under previously existing statutes, may, by a majority vote of its stockholders or members, be brought under the provisions of this Act by limiting its membership and adopting the other restrictions as provided herein. It shall make out in duplicate a statement signed and sworn to by its directors to the effect that the corporation or association has, by a majority vote of the stockholders or members, decided to accept the benefits and be bound by the provisions of this Act and has authorized all changes accordingly. Articles of incorporation shall be filed as required in Section 8, except that they shall be signed by the members of the then board of directors. The filing fee shall be the same as for filing an amendment to articles of incorporation.

"(a) Where any association may be incorporated under this Act, all contracts heretofore made by or on behalf of same by the promoters thereof in anticipation of such associations becoming incorporated under the laws of this State, whether such contracts be made by or in the name of some corporation organized elsewhere, and when same would have been valid if entered into subsequent to the passage of this Act, are hereby validated as if made after the passage of this Act."

If the plaintiff corporation had brought itself under either of the two classes mentioned when the agreement was made, that is, by original incorporation, or by accepting the provisions of the 1923 law, it would have been entitled to operate as a co-operative marketing association, but otherwise not. In the instant case the association had not then complied with either one.

It is noticeable that section 27 conjoins the words, "That the corporation or association has * * * decided to accept the benefits and be bound by the provisions of this act * * *." We cannot untwine these interlaced words, and accord the benefits of the act to an association out of the fold, without eliminating this entire section, which we are not permitted to do.

4. Section 27 (a) is relied upon as having validated such contracts, but it speaks of "all contracts *heretofore* made." "Heretofore" means prior to March 30, 1923, when the Act became effective. The contract in dispute was made on December 6, 1923; so the clause has no application. Furthermore, in *Atkinson v. Colo. Wheat Growers Ass'n, supra,* the feature of the act purporting to legalize all such contracts antedating its passage, was held invalid to that extent because it was retrospective, and so wrong, because it attempted to create a new liability on a transaction already past. Colo. Const., art. 15, sec. 12; *Evans v. Denver,* 26 Colo. 193, 196, 57 Pac. 696; *Denver, etc., R. Co. v. Woodward,* 4 Colo. 162, 165.

5. Counsel for the association argues that it was legally organized in 1922, and was at least a de facto corporation, but we need not determine this, because, whether de jure or de facto, it was not, as a matter of public policy, entitled to make such contracts without compliance with the law of 1923. So, if we should entertain this suit, it would be in favor of an agreement that is contrary to public policy brought by one in pari delicto.

6. Section 29 reads: "No association organized hereunder and complying with the terms hereof shall be deemed to be a conspiracy or a combination in restraint of trade or an illegal monopoly; or an attempt to lessen competition or to fix prices arbitrarily nor shall the marketing contracts and agreements between the association and its members or any agreements authorized in this Act be considered illegal as such or in unlawful restraint of trade or as part of a conspiracy or combination to accomplish an improper or illegal purpose."

The first words of the above section limit its operation to "association's organized hereunder and complying with the terms hereof." The section further refers to "marketing contracts and agreements between the association and its members, or any agreements authorized in this Act." Section 18 of the act also provides: "The association and its members may make and execute marketing contracts, requiring the members to sell, for any period of time, not over ten years, all or any specified part of their agricultural products or specified commodities exclusively to or through the association, or any facilities to be created by the association   *   *   *."

In considering the authority for such contracts, we must observe that in its application to this particular matter, the wording is limited to associations organized under the act, or that have accepted and complied with its terms.

7.    Counsel for the association believe that one rule of public policy ought not to be applied to corporations that have complied with the marketing act, and another rule to those that have not so complied, but the objection answers itself. As to the power of the legislature over matters of public policy, see *Rifle Potato Growers Ass'n v. Smith, supra,* and cases there cited; see also 6 R. C. L., p. 109, § 108. Co-operative marketing associations are by no means the only class of corporations or associations that are compelled to comply with laws designed for the protection of the public, as a condition precedent to engaging in particular callings. In the last analysis, we doubt if even the plaintiff association would care very long to indorse the precedent that it now seeks, that an association not having accepted or complied with the 1923 act, and being unrestricted thereby, should so enjoy greater advantages, or be subject to lesser limitations, than those possessed by, or imposed upon, plaintiff itself.

8.    Thede's counsel argues further that the original contract between Thede and the association was changed to his detriment without his consent, because of material

changes in the objects and purposes of the association, such as that the original articles provided for the marketing of wheat and wheat products only, whereas, the amended articles permitted the association to engage in the marketing of all kinds of agricultural products; also that the by-laws were radically changed, but an answer to these questions is unessential to our decision since we hold that the contract was void in its incipiency, and that the dead cannot be brought to life by medicine subsequently administered.

The judgment is affirmed.

MR. JUSTICE WHITFORD and MR. JUSTICE BUTLER not participating.