# April Term, 1928

No. 11,936.

BRIMBLE *v.* SICKLER, EXECUTRIX.

Decided February 27, 1928. Rehearing denied April 16, 1928.

## On claim for widow's allowance. Claim denied.

### *Affirmed.*

1. HUSBAND AND WIFE—*Separation Agreement—Widow's Allowance.*
   Where a husband and wife agree with each other to waive any
   and all claims of every kind to any property that might be due
   to either from the estate of the other, it is held that a claim of
   the widow for an allowance from the husband's estate was prop-
   erly denied.

2. EXECUTORS AND ADMINISTRATORS—*Widow's Allowance—Nature.* A
   claim for a widow's allowance is a claim against the estate of her
   deceased husband.

3. *Widow's Allowance—Waiver—Validity.* A waiver in general
   terms broad enough to cover a widow's allowance is valid.

4. HUSBAND AND WIFE—*Separation Agreement—Validity.* While an
   agreement between husband and wife to separate in the future is
   unlawful, an agreement of settlement after separation, or provid-
   ing for separation forthwith, is not so.

5. EXECUTORS AND ADMINISTRATORS—*Widow's Allowance—Waiver.* The
   suggestion that a widow's allowance is inalienable and cannot
   be waived, overruled.

6. HUSBAND AND WIFE—*Public Policy—Widow's Allowance.* While
   public policy requires that a widow be supported out of the estate
   of her deceased husband, it does not demand that a woman, who

494

for a consideration, has surrendered her marital rights expressly including her right to the support of her husband during his life, should have that support after his death.

7. EXECUTORS AND ADMINISTRATORS—*Widow's Allowance—Purpose*. The basic reason for a widow's allowance is, that it is the duty of the husband to support her.

*Error to the District Court of the City and County of Denver, Hon. Samuel W. Johnson, Judge.*

Mr. JACOB V. SCHAETZEL, Mr. WALTER E. SCHWED, for plaintiff in error.

Mr. WILLIAM B. KING, Mr. EDWARD L. OAKES, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE DENISON delivered the opinion of the court.

ERNESTINE L. Brimble, plaintiff in error, claimed a widow's allowance from the estate of David Brimble. The county court allowed the claim, but, on appeal, the district court denied it, and she brings error.

David Brimble and Ernestine were married July 20, 1914. December 5, 1914, they entered into an agreement whereby, after reciting their marriage and inability to continue marital relations and further reciting certain payments by him to her as a consideration, they agreed: (1) To forthwith cease such relations and that she would not demand their resumption. (2) That he would give her certain money and property, the receipt of which she acknowledged "in full satisfaction of all obligations of" him "for her future support and in full satisfaction of all other obligations on his part as hereinafter more particularly set forth," and (3) She agrees "that she will not at any time hereinafter seek, ask, demand or

require in any manner, any moneys of any nature as and toward her support; and that in the event at any future time any proceedings in divorce are had by either of the parties hereto she will not in such proceedings make any demand and will not accept or receive any moneys or thing of value in the nature of alimony," and (4) Each agrees "to and with the other, and to and with the personal representatives and heirs of the other, that each will and does hereby waive any and all claim of every kind and nature in and to any moneys, real and personal property and other assets of every kind that might be due to either from the estate of the other as widow or husband or heir or in any other manner."

The parties thenceforth lived apart until 1926, when David died. They had no children and were never divorced. Was the widow entitled to the allowance? It seems clear that she was not. By paragraph 4, just quoted, she waived her right to anything "that might be due" to her "from the estate" of her husband "as widow." The widow's allowance, being a claim against the estate (*Dry Goods Co. v. Bank & Trust Co.,* 75 Colo. 451, 226 Pac. 293; *Wilson v. Wilson,* 55 Colo. 70, 77, 132 Pac. 67; *Remington v. Remington,* 72 Colo. 132, 209 Pac. 802), is "due from the estate," and without question is due to her "as widow"; indeed we believe it is the only thing that is so due. Then she has waived it.

It is claimed that a waiver of the widow's allowance must be express. *Deeble v. Alerton,* 58 Colo. 166, 143 Pac. 1096, Ann. Cas. 1916 C, 863; *Wilson v. Wilson, supra.* If that means that the words "widow's allowance" must be used, we do not agree with it. This court has not so held. If it means that there must be some term which clearly comprehends the scope of those words, it is here, as we have shown above, and admits of no doubt. In *Deeble v. Alerton, supra,* the wife expressly surrendered nothing. In *Wilson v. Wilson,* 55 Colo. 70, 132 Pac. 67, there was no term in the agreement which necessarily included the widow's allowance and it ap-

pears that support was due from the husband. That a waiver in general terms broad enough to cover the widow's allowance is valid see 13 R. C. L. 1041, and cases there cited, some of which are cited below.

It is suggested that the contract in question is void because it is an agreement between man and wife to separate, but the law seems to be that, while an agreement to separate in future is unlawful, an agreement of settlement after separation or providing for separation forthwith is not so. 13 C. J. 465, 30 C. J. 1059;* *Daniels v. Benedict,* 97 Fed. 367. The last is the nature of the present agreement. It, therefore, is not unlawful as an agreement to separate.

It is suggested that the widow's allowance cannot be waived, that it is inalienable. This, however, seems not to be the law. 24 C. J. 251, 252, 255, citing many cases, among which are *Kroell v. Kroell,* 219 Ill. 105, 76 N. E. 63, 4 Ann. Cas. 801, distinguishing *Phelps v. Phelps,* 72 Ill. 545, 22 Am. Rep. 149; *Rieger v. Schaible,* 81 Neb. 33, 115 N. W. 560, 17 L. R. A. (N. S.) 866; *Chaffee v. Chaffee,* 70 Vt. 231, 40 Atl. 247; *Noah's Estate,* 73 Cal. 583, 15 Pac. 287, 2 Am. St. Rep. 229; *Hollenbeck v. Pixley,* 3 Gray (Mass.) 521.

Then too, we should remember that this alienation is not a mere peril against which the widow should be protected, but a privilege by which she may, in her husband's lifetime, secure something of value in exchange for what, unless she survives him, will never exist. The allowance then is not inalienable. In this state the allowance cannot be inalienable, at least after its award by the court, since we have held that it may then be garnished. *Dry Goods Co. v. Bank & Trust Co.,* 75 Colo. 451, 226 Pac. 293.

It is urged that public policy requires that widows and orphans be supported out of the estate, and that is true, but it does not demand that a woman who for a

---

*The cases are too numerous to cite.

consideration has surrendered her marital rights, expressly including her right to the support of her husband during his life, should have that support after his death. The basic reason for the widow's allowance is that it is his duty to support her. If there were children different questions would be presented which we do not now consider.

Judgment affirmed.

MR. JUSTICE CAMPBELL, MR. JUSTICE WHITFORD and MR. JUSTICE ADAMS dissent.

MR. JUSTICE WALKER specially concurring.

There is involved here a separation agreement, which is not assailed upon any ground of fraud, overreaching, or undue influence, and pursuant to which a separation existed at the time of the husband's death. I concur in the opinion, but in doing so, I do not intend to sanction any departure from the rule laid down in *Wilson v. Wilson, Deeble v. Alerton,* and *Remington v. Remington.* I do not understand the opinion to overrule those cases, nor to refuse full application of their doctrine. That those cases do not hold that the widow's allowance could not be contracted away, under any circumstances, nor that the phrase "widow's allowance" must be used to make a good waiver of the claim, seems clear upon a consideration of their facts and of the language of the opinions. That they do hold that the general release of property rights, or any language not so clear as to admit of no doubt, would not waive the widow's allowance, is also plain. I perceive no room for doubt in the terms used in the contract under consideration in the instant case.

MR. JUSTICE ADAMS dissenting.

The opinion of the majority of the court refers to the consideration for the contract between the husband and wife as "certain payments by him to her." To be definite, it consisted of "the sum of One hundred and fifty

dollars and also all chickens now owned by him at his ranch in said Weld County, Colorado.'' He kept the ranch and all else that he owned; she got one hundred and fifty dollars and some chickens. With this cheap riddance, they went their several ways. Whatever may be said of antenuptial or postnuptial contracts between husband and wife, I think that there are even in these days at least some marital obligations that cannot be donned and doffed like a garment, to suit the caprice or convenience of the wearer, particularly when the interests of the state are involved, as this court and other courts have repeatedly declared.

Section 5347, C. L. 1921 reads: "If any decedent leaves a widow residing in this state, in all cases she shall be allowed to have and retain as her sole and separate property, one bed and bedding, wearing apparel of herself and family, one cow and calf, one saddle and bridle, one horse, household furniture for herself and family, and also the same amount and species of property as is or may be by law exempt from execution, not to exceed in any event the sum of two thousand dollars in value * * *."

She may relinquish her right to specific property and take the value thereof in money or property. C. L. 1921, sec. 5349.

Provisions for widows' allowances have been contained in our laws without interruption since the organization of the Territory of Colorado in 1861. Session Laws 1861, p. 248; Rev. Stats. 1868, p. 260; Gen. Laws 1877, sec. 892; Gen. Stats. 1883, sec. 1049; Rev. Stats. 1908, sec. 7223; Comp. Laws 1921, sec. 5341. The act has been amended from time to time, as was done in 1903, to make provision, among other things, that the widow's allowance should not exceed, in any event, the sum of two thousand dollars in value, also to give the same rights of allowance to minor children, if there be no widow. Session Laws 1903, p. 521, sec. 134. There have been other statutory changes, but in every act

passed since 1861, this language has been used: "If any decedent leaves a widow residing in this state, *in all cases she shall* (the italics are mine) be allowed to have and retain as her sole and separate property," etc.

Judge Woerner in his work on the American Law of Administration (3d Ed.), vol. 1, at page 234 says: "These provisions, like the kindred subject of the homestead exemption laws, are of purely American origin. They owe their existence to a humane and benevolent consideration of the distress and helplessness of widows and orphans newly bereft of their protector and supporter, and to a wise public policy, recognizing the true relation of the State to the family as its organic, constituent element. 'By the enactment of such laws' says Bartch, J. of the Supreme Court of Utah, 'the legislature, under a wise public policy, seeks to guard and protect the family which constitutes the foundation of the State itself, during the trying period of affliction and need caused by the death of the one who directed the family affairs.' (In re Pugsley, 27 Utah 489, 76 Pac. 560.) Again: 'The relation of husband and wife, parent and child, is the unit of civilization, and the State has thought to encourage that relation by protecting it from absolute want, arising from the vicissitudes of life.' "

The above principles have been repeatedly recognized by this court. They uphold the statute instead of undermining it. The words of the statute are words of mandate—she *shall* receive, and as said by Mr. Justice Campbell in *Hale v. Burford,* 73 Colo. 197, 199, 214 Pac. 543, "The exigencies of the present case do not require a decision as to when a widow ceases to be a widow." That she is a widow is admitted. I do not believe that our previous decisions that a widow's allowance is a part of the costs of administration was a mistake, or hastily uttered. It has been said so frequently, and under such a variety of circumstances. See the following cases: Bailey, J., in *Wilson v. Wilson,* 55 Colo. 70, 77, 132 Pac. 67; Burke, J., in *Zackheim v. Zackheim,* 75 Colo. 161,

225 Pac. 268; Scott, J., in *Grover v. Clover,* 69 Colo. 72, 169 Pac. 578; Teller, J., in *Remington v. Remington,* 72 Colo. 132, 209 Pac. 802; Campbell, J., in *Hale v. Burford, supra;* Scott, J., in *Deeble v. Alerton,* 58 Colo. 166, 143 Pac. 1096, Ann. Cas. 1916 C, 863; *In re Estate of Johnson,* 154 Iowa, 118, 134 N. W. 553, 37 L. R. A. (N. S.) 875.

To the point of counsel for plaintiff in error that public policy requires that widows and orphans be supported out of the estate, a statement based on that which this court itself has said before, the majority opinion today attempts to answer it by saying that "for a consideration" the widow surrendered her rights. And also the rights of the state? Is the opinion responsive to counsel's point? Contracts against public policy are void. They are not the subject of barter, sale or exchange. I do not wish to do injustice to the views of any of my learned associates, but since it has been determined that the widow is entitled to nothing, I respectfully suggest that the reason ought to be on more solid ground than the mere statement that she sold her rights. Such an agreement was pronounced void by the Iowa court, *In re Estate of Johnson, supra.* Antenuptial and postnuptial contracts are subject to the same rule when considering the widow's allowance. *Deeble v. Alerton, supra.* "Any agreement which in itself is calculated to induce a dereliction in the performance of a private duty is void." *Armstrong v. Gresham,* 73 Colo. 13, 16, 213 Pac. 114.

I do not agree with the majority opinion that the basic reason for the widow's allowance is that it is the husband's duty to support the wife, if I correctly interpret the words. The basic reason is that she shall have something to live on after he is dead, and can no longer support her, and to prevent her from becoming a public charge. It is an outgrowth of the common law as to the widow's quarantine, discussed in *Wilson v. Wilson, supra.* (55 Colo. 70, 77.) The reason for the statute is

also well stated in the above quotation from Woerner on the American Law of Administration, at page 234, under the title, "Provisional Alimony of the Family."

In *Remington v. Remington, supra,* it is held that a widow's allowance "is a matter wholly beyond the control of the property owner and a creature of the statute."

The widow's allowance is not only designed for the protection of the widows and children, but for the state as well. *Remington v. Remington, supra; De Quintana v. Madril,* 71 Colo. 123, 127; *Deeble v. Alverton, supra,* at page 171; *Wilson v. Wilson, supra,* at page 76.

The duty of the court to protect the interests of the people when their interests require it is recognized in other classes of litigation. As said by Mr. Justice Burke in *Model Land and Irrigation Co. v. Baca Irrigation Ditch Co.,* 83 Colo. 131, 262 Pac. 517, "The people are * * * a silent party to every water adjudication, as they are to every divorce proceeding, and the same duty devolves upon the courts to protect their interests." I see no reason to make an exception in a matter of such great social and legal importance as a widow's allowance.

The legislature, not the court, determines questions of public policy. As said by Mr. Justice Denison in *Rifle Potato Growers Ass'n v. Smith,* 78 Colo. 171, 174, 240 Pac. 937, 938: "It is unnecessary to cite authority for the power of the legislature over questions of public policy, but see *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777; *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936; *Pulpwood Co. v. Green Bay etc. Co.,* 168 Wis. 400, 170 N. W. 230; *Dark Tobacco etc. Ass'n v. Mason,* 150 Tenn. 228, 263 S. W. 60." Followed in *Colorado Wheat Growers Ass'n v. Thede,* 80 Colo. 529, 253 Pac. 30. In the last named case, at p. 535, we cited 6 R. C. L. p. 109, § 108, wherein it is said, inter alia, (p. 110) "Where courts intrude into their decrees their opinion on questions of public policy they in effect constitute the judicial tribunals as law-making bodies in

usurpation of the powers of the legislature." The Rifle Potato Growers case was cited with approval by the Supreme Court of the United States in *Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Assn.,* decided February 20, 1928.

It may be a question whether the trial judge did not give a more acceptable reason for denying the award than that of this court in its holding that the widow sold out her rights. The trial judge thought that because the parties married late in life, lived together for only about five months, had not lived together for twelve years, and were not living together at the time of the husband's death, the reason for the allowance failed, and so she ·was not entitled to anything under the statute. There is at least obiter precedent in this state to sustain such a view. *Bubser v. Herrmann,* 71 Colo. 95, 97, 204 Pac. 333. But here is the fallacy—the learned judge to support his position is obliged to do that which the Supreme Court of the United States, this court, and other courts, have repeatedly said that courts shall not do, namely, declare what the public policy of the state is, or is not, in the face of a legislative enactment. As said in 6 R. C. L. p. 107–108, citing *People v. Hupp,* 53 Colo. 80, 123 Pac. 651, 41 L. R. A. (N. S.) 792, Ann. Cas. 1914 A, 1177, and numerous State and United States authorities, "The courts can have no concern as to the expediency, the wisdom, or the necessity for the enactment of laws. Or, as has been said, the courts do not sit to review the wisdom of legislative acts, and it is not for the court to decide whether a law is needed and advisable in the general government of the people." If a part of the statute may be judicially repealed, it may be done altogether. If the rule above stated did not obtain, then I take it that the legality of the co-operative marketing act, the eighteenth amendment, the laws of marriage and divorce, or any other law might be terminated whenever someone finds himself able to persuade the court that public policy no longer justifies their enforcement.

Concerning contracts between husband and wife, Mr. Justice Whitford said in *Hill v. Hill,* 70 Colo. 47, 49, 197 Pac. 236: "In contracts of this nature it must be made to appear that the husband has dealt fairly and equitably by his wife in the transaction. We said in *Daniels v. Daniels,* 9 Colo. 133, 10 Pac. 657, that the contract must be in all respects fair, reasonable and just, and that it must make sufficient provision for the maintenance of the wife according to the status of the parties.

"This agreement is manifestly unfair to the defendant in error. The plaintiff in error seeks to free himself from all liability on account of his wife during her natural life by giving her a lump sum, less than one-third of his annual net income. The agreement is neither reasonable nor just and cannot be sustained. We are of the opinion that the court did not abuse its discretion in awarding an allowance of $60.00 per month for court costs, attorney's fee and temporary alimony."

If it be said that questions similar to the above were not raised by the pleadings in the present case, the answer is that the whole matter was before the court and that this was a claim for a part of expenses of administration, for which no written pleadings are required. Mere technical rules of practice are disregarded when no formal pleadings are required. *Reiter, Administrator v. Pollard,* 75 Colo. 203, 225 Pac. 222; *Model Land and Irrigation Co. v. Baca Land and Irrigation Co., supra.* See also section 5337, C. L. 1921, which reads: "The manner of exhibiting claims against estates shall be by filing in the county court the account, or instrument of writing, or an exemplification of the record whereon such claim is founded. Formal pleadings shall in no case be required; but the issue shall be formed as in actions before justices of the peace, but heard and determined as in civil actions in courts of record."

I do not mean the slightest disrespect when I say that I think it ought to take more than one hundred and fifty dollars and some chickens to abrogate a law. The

legal way to get rid of it if undesirable is by legislative repeal.

I cannot but feel that the majority view does injustice to both the letter and spirit of our former decisions, and is a step backwards. The fact that there is a diversity of opinion in the courts of other states was fully recognized by us in *Wilson v. Wilson, supra,* but we there took a stand for that which we then decided was the better doctrine. I think the choice then made was right and is still right.

I am authorized to say that Mr. Justice Whitford and Mr. Justice Campbell agree with me in the above dissent.