No. 15,906.

ESTATE OF McLAUGHLIN.
McLAUGHLIN v. CRAIG ET AL.
(184 P. [2d] 130)

Decided July 28, 1947.

Mr. JOHN W. O'HAGAN, for plaintiff in error.

Messrs. SOUTHARD & SOUTHARD, for defendants in error.

MR. JUSTICE ALTER delivered the opinion of the court.

MARY E. McLAUGHLIN, plaintiff in error, sued out a writ of error to review a judgment of the county court of Weld county denying her claim for a widow's allowance in the matter of the estate of her deceased husband, Charles E. McLaughlin. We will refer to her herein as plaintiff or by name.

The cause is here on an agreed record. Sometime prior to October 4, 1946, plaintiff sued Charles E. McLaughlin in the district court of Larimer county, Colorado, for a divorce, and on the date last mentioned an interlocutory decree was entered in her favor. Joy Craig, Marjorie Halcomb and Beatrice Carr, defendants in error, are adult daughters of deceased and stepchildren of plaintiff. Prior to the hearing in the divorce action, the parties thereto entered into the following stipulation:

"State of Colorado ⎫
                    ⎬ ss.   In the District Court
"County of Larimer ⎭          No. 9410

"Mary E. McLaughlin, ⎫
            Plaintiff, ⎪
        vs.            ⎬   Stipulation
Charlie E. McLaughlin, ⎪
            Defendant. ⎭

"It is hereby stipulated and agreed by and between the plaintiff above named and the defendant above named that in full settlement, compromise and satisfac-

tion of all claims that plaintiff has or may have against the defendant for alimony, support money and all other purposes whatsoever, the following property settlement and agreement is herein entered into:

"1. It is mutually agreed by and between the parties that the plaintiff is the owner of all household furniture, cooking utensils and bedding located at the parties' home more particularly described as follows:

"Lots 11, 12, 13, 14 in Block 2 Rostek Section Addition a subdivision of a portion of the NW ¼ of Section 9, Township 7, Range 69 W. of the 6th P. M. in the County Larimer and State of Colorado;

"2. It is further agreed that the plaintiff shall be the owner of all chickens heretofore owned by the parties, and it is further agreed that the defendant shall convey to the plaintiff by quit claim deed his interest in Lot 14 to the above described property; in other words the lot on which the buildings and barn is now located, including fences surrounding said lot.

"3. It is further mutually agreed that the defendant will pay forthwith One Hundred Dollars ($100.00) for plaintiff's attorney fees and court costs incurred herein;

"4. It is further mutually agreed that the plaintiff herein will convey by quit claim deed all her right, title and interest in Lots 11, 12 and 13 of the property described in Paragraph numbered 1 above; in other words, the three lots upon which there are no buildings;

"5. It is further mutually agreed that the plaintiff herein relinquishes all her right, title and interest to the defendant's bank account in The Poudre Valley National Bank; two (2) cows; two (2) horses; two (2) pigs and automobile, and

"6. It is further mutually agreed that the plaintiff herein will return to the defendant herein title which she has in her possession of defendant's automobile, his shirt, ration book, birth certificate and insurance papers.

"This agreement is conditioned upon the approval of the Court of its terms and the incorporation of said

terms into any decree entered herein, and shall be of no force or effect unless so incorporated."

The stipulation was approved by the district court in the divorce action and the material parts thereof pertaining to the property division, which were specifically set forth therein, were fully carried out and effectuated by the parties thereto by the execution and delivery of deeds and the delivery of possession of the personal property in accordance with its terms. Charles E. McLaughlin died October 16, 1946, while a resident of Weld county. November 2, 1946, plaintiff petitioned the county court for letters of administration, which were thereupon issued to her, and on the same day she filed an inventory in which was listed the real estate mentioned in the stipulation which was by her deeded to the deceased, valued at $800; also mentioned therein were a checking account in the amount of $674; two work horses and three milk cows, one calf, one model A Ford, and one set of harness, of the total value of $884.39, and two promissory notes of the value of $510. The real estate and personal property described in the inventory is, in the main, property conveyed, transferred and released to deceased by plaintiff under the terms of the written stipulation hereinbefore set forth. November 25, 1946, plaintiff petitioned for an allowance as widow of the deceased, and for an appraisement of the property, and on said date, without notice to any parties interested in decedent's estate and solely on the evidence contained in the files and records of the estate, her petition was allowed and an order entered awarding her a widow's allowance in the sum of two thousand dollars, and thereafter a warrant for the appraisement of the property set forth in the inventory was issued. Plaintiff then selected the real property in the estate to apply upon her widow's allowance. December 16, 1946, the daughters of decedent filed a motion in the county court asking to have set aside the order granting plaintiff a widow's allowance and that order be declared void and

of no force and effect, basing their motion upon the terms of the stipulation and as the same was incorporated in the interlocutory decree. January 30, 1947, the motion was heard, and on February 19, 1947, an order was entered by the county court, vacating and nullifying its orders theretofore entered granting the widow's allowance and requiring plaintiff to return and account for all property theretofore taken by her on account of her widow's allowance. March 1, 1947, plaintiff filed a written motion for rehearing, which was denied March 11, following.

The sole specification of error is that the court erred in denying plaintiff's application for a widow's allowance.

Subsequent to the entry of the interlocutory decree and before the divorce became a finality, defendant in the action, as hereinbefore stated, died. Under such circumstances, the general rule of law is that a divorce action immediately abates, for the object sought to be attained by final decree already is accomplished by the prior death of one of the parties, and there remains no status of marriage upon which a final decree of divorce may operate. *Morris v. Propst,* 98 Colo. 213, 55 P. (2d) 944; 158 A.L.R., p. 1206; 17 Am. Jur., p. 366; 27 C.J.S., p. 685.

Upon the death of defendant in the divorce action plaintiff became his widow, and as such was entitled, under section 211, chapter 176, '35 C.S.A., to have her claim for widow's allowance granted as a claim of the fourth class under the provisions of paragraph "Fourth," section 17, chapter 235, S.L. '41, unless precluded therefrom by the terms and provisions of the stipulation, supra.

"Under our statute, '35 C.S.A., c. 176, §§195 [§17, c. 235, S. L. '41], 211, it has been uniformly held that a claim for widow's allowance is a claim against the estate of her deceased husband and that she is entitled to the

allowance independent of her distributive share in her husband's estate. (citing cases)" * * *

"The basic reason for a widow's allowance is the primary duty of the husband to support his wife and the statute extends this duty to support her as his widow from the estate funds during the period of administration. * * * In this state it is well recognized, and properly so, that a wife may waive her widow's allowance by contract with her husband. *Brimble v. Sickler, supra; Vincent v. Martin,* 91 Colo. 106, 11 P. (2d) 1089. However, the waiver cannot arise by presumption, assumption or construction. It must be in terms that do not admit of a doubt and clearly and definitely indicate a purpose to waive this specific statutory right. *Remington v. Remington, supra; Vincent v. Martin, supra.*" *Williams v. Pollard,* 101 Colo. 262, 72 P. (2d) 476.

The language quoted above with reference to widow's allowance, and its waiver, or language of similar import, has been announced and approved in actions involving antenuptial, postnuptial, separation agreements, and reciprocal wills. *Griffee v. Griffee,* 108 Colo. 366, 117 P. (2d) 823; *Bradley v. Bradley,* 106 Colo. 500, 106 P. (2d) 1063; *Vincent v. Martin,* 91 Colo. 106, 11 P. (2d) 1089; *Brimble v. Sickler,* 83 Colo. 494, 266 Pac. 497; *Remington, v. Remington,* 72 Colo. 132, 209 Pac. 802; *Deeble v. Alerton,* 58 Colo. 166, 143 Pac. 1096; *Wilson v. Wilson,* 55 Colo. 70, 132 Pac. 67.

We have said, in construing antenuptial, postnuptial, and separation agreements, that there can be no waiver of the rights to a widow's allowance except by express terms. The waiver in such cases should appear beyond any reasonable doubt, as we said in *Bradley v. Bradley, supra.* We held in *Remington v. Remington, supra, Vincent v. Martin, supra,* and in other decisions, that the waiver of the right in antenuptial, postnuptial, and separation agreements, as well as in connection with reciprocal wills, cannot arise by presumption, assumption or construction. Under all decisions of this court which

have come to our attention, a widow's allowance is not in the nature of an interest in an estate and does not pass to the widow by descent. Under our statutes it is a fourth class claim against the estate of a decedent, payable out of the assets thereof in the order of its classification. Our first statute pertaining to widow's allowances is found in the territorial laws of 1861, and its object and purpose was beneficient; it was to furnish means of support for the widow and minor children during the period of administration. The duty of providing for a wife and minor children devolves upon the husband and is transferred to his estate upon his death. In reason and in logic, and in accordance with the liberal construction which has been given antenuptial, postnuptial, and separation agreements, we can perceive of no reason why the same liberality of construction should not be followed here. The widow's allowance is personal to her and may be waived (*Brimble v. Sickler, supra; Vincent v. Martin, supra*), but the waiver must be in such terms as admit of no doubt, and in the absence of such terms the widow's right to such allowance is absolute.

In the able and exhaustive briefs of counsel many authorities from courts and jurisdictions other than our own have been cited, but we consider that the question here presented is definitely and conclusively determined by our own decisions, for in *Wilson v. Wilson, supra,* we said: "While it is true that there is a diversity of opinion in the courts upon the construction of contracts [antenuptial] like this, on the point as to whether by general terms the widow's allowance may be relinquished, that cannot well be reconciled, yet it appears that the decisions which we have cited, especially the cases from Iowa and Michigan, from which liberal quotations have been made, state the better doctrine."

It seems well settled that the right to a widow's allowance is strongly favored by our representative legislative bodies as is indicated by long-standing laws upon the

subject, and the right will not be held to have been waived or relinquished except in cases where the intention to waive or relinquish is established beyond doubt. In considering the stipulation in this case which was executed under the advice of counsel, we find no suggestion that the parties intended to compromise, settle or waive any statutory allowance which the widow might enjoy. We cannot say that it was the intention of plaintiff, expressed in the stipulation beyond doubt, to waive her statutory allowances, and under our decisions that waiver cannot arise by presumption, assumption, or construction.

The order entered by the county court November 25, 1946, awarding plaintiff her widow's allowance in the sum of two thousand dollars was proper, and, under the circumstances here disclosed, was mandatory. It should be reinstated with full force and effect. The court erred in setting aside and nullifying its order.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of the plaintiff by reinstating and giving full force and effect to the court order of November 25, 1946, awarding the allowance.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.