## No. 14,850.

LYONS, ADMINISTRATRIX *v.* EGAN, GUARDIAN.

(108 P. [2d] 873)

Decided October 28, 1940.   Rehearing denied January 6, 1941.

Mr. BENJAMIN C. HILLIARD, JR., Mr. GEORGE A. TROUT, Mr. BART W. O'HARA, for plaintiff in error.

Mr. JOHN T. ADAMS, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as Louise; Frank G. Lyons, deceased, as Lyons; defendant in error guardian, as Lila; her wards as the minors, and their mother (now Berenice Clark) as Berenice.

Lyons was first married to Berenice, and the minors (aged respectively 14, 15, and 16 years at the time of their father's death) are their sons. They were divorced and Lyons married one Frances. He and Frances were divorced in 1935 and he married Louise in 1937. He died intestate October 8, 1938, and his widow Louise was appointed administratrix and filed claim for "widow's allowance." The minors (now residing in Florida with their mother, guardian of their persons by appointment in that state), by Lila, their grandmother (residing in Colorado and guardian of their property here by appointment of the Colorado court) filed claims for "orphan's allowance." The county court allowed each claim for $1,000. On appeal to the district court this was affirmed. To review that judgment this writ is prosecuted. The assignments present but two possible questions: The correctness of the court's interpretation of the controlling statute; and, should it become material here, the refusal of the court to determine the residence of the minors.

■ Before proceeding to a consideration of the contentions presented we pause to observe that we are required to determine only clear cut legal propositions. The sentimental arguments presented are out of place

**34**

and unsupported by the record, and while all presumptions are in favor of the judgment the mere fact that two courts have reached the same conclusion is not controlling.

██ The particular statute we are here called upon to construe is section 211, chapter 176, '35 C. S. A. Similarity of provisions and specific expressions in preceding statutes, and decisions thereunder, make it advisable first to trace this legislation from its beginning. Its first appearance is in the Session Laws of 1903. We quote only the material portion of the original act, subsequent amendments, and the present law. "If any decedent leaves a widow residing in this state, in all cases she shall be allowed to have and retain as her sole and separate property [specific articles enumerated]. If there be no widow, but an orphan minor child, or children, such child or children shall be entitled to the same rights of allowance as a widow * * *." S.L. '03, p. 521, c. 181, §134, R.S. '08, §7223.

That section was amended in 1915 by adding thereto the following: "If the decedent be a woman and at the time of her death left an orphan minor child or children whose male parent was not living at the time of the death of such decedent, such child or children shall be entitled to the same rights and allowance as a widow * * *." S. L. '15, p. 496, c. 173, §14, C. L. '21, §5347.

The section was again amended in 1929 to read as follows: "If any decedent leaves a widow residing in this state, in all cases she shall be allowed to have and retain as her sole and separate property, the sum of two thousand dollars in cash * * *. If the decedent be a woman and at the time of her death left an orphan minor child or children, whose male parent was not living or who was divorced from such woman, or had deserted her and such child or children, at the time of the death of such decedent, such child or children shall be entitled to the same rights and allowances as a widow * * *." S. L. '29, p. 640, c. 184, §1.

The section was again amended in 1935 to read as it stands today: "If any decedent leaves a widow residing in this state * * * she shall be allowed to have and retain as her sole and separate property the sum of Two Thousand Dollars ($2000.00) in cash * * *. Provided, however, if any decedent leaves such widow and a minor child or children, the step-child or step-children of such widow, in such case such allowances to the widow shall be limited to one thousand dollars ($1000.00) * * * and the legal guardian or next friend appointed by the court for such child or children shall select and receive the balance of such allowance to be used for the exclusive benefit of such child or children. If there be no widow residing in this state, or if the widow die before the allowance is set over but an orphan minor child or children of such widow or of her deceased husband survive, such child or children shall be entitled to the same rights of allowance as a widow * * *." '35 C. S. A., c. 176, §211, S. L. '35, p. 398, c. 109, §1. So far as the omitted portions in the last quoted section are material they are mere repetitions of the section amended.

The legislative intent in limiting the act of 1903 (and this applies to all subsequent amendments) was thus stated by this court in 1914. "It is designed not only as a protection for the widow and children as against want or humiliation, but a protection for the state as well." *Deeble v. Alerton,* 58 Colo. 166, 171, 143 Pac. 1096. Prior thereto we said that the purpose was "to some extent at least, support to the wife and children during the period of administration, and is founded in part at least upon considerations of public policy." *Wilson v. Wilson,* 55 Colo. 70, 73, 132 Pac. 67. So far at least as the widow was concerned that public policy must have rested upon the duty of the state to support her if a resident. Otherwise that duty would rest upon the state of her residence. No other theory accounts for the limitation.

█ The act of 1915 was before us in 1922 on the question of the necessity of residence in Colorado as a prerequisite to the granting of a widow's allowance. The precise question was whether the residence of the husband, in Colorado, fixed that of the wife and it was held that under the circumstances there appearing it did not, and that she resided in Iowa. The allowance had been denied the widow in both the county and district courts on the ground of her nonresidence, and that judgment was affirmed. We therein also commented further, and possibly shed additional light, on the legislative intent in enacting the limitation. *Bubser v. Hermann*, 71 Colo. 95, 204 Pac. 333. Again in the same year we had before us those portions of the act of 1915 relating to the allowance to minors. Here deceased was a nonresident, but his property was in Colorado in which state his divorced wife and his children lived. The petition of the latter for orphan's allowance was opposed by a creditor. County and district courts had held against claimants and that judgment was based solely upon the fact that deceased was a nonresident at the time of his death. While the real question there presented was whether the law of Colorado or New Mexico was applicable we employed this pertinent language: "Residence within this state is required of the widow or orphans who choose to avail themselves of the benefits of the statute, but it is not provided expressly or by implication that the decedent too must have been a resident of this state." *De Quintana v. Madril,* 71 Colo. 123, 125, 204 Pac. 483. In the last mentioned case we reversed the judgment and repeated and reaffirmed the quotation from *Deeble v. Alerton, supra.*

It thus appears that the "allowance" was, by the act of 1903 limited to a *resident* widow and children of the deceased, with no specific requirement as to the residence of the children. The amendment of 1915 simply extended the allowance to children of a deceased

woman, provided their father was not living. The amendment of 1929 simply substituted a lump sum of $2,000 for specific property. The amendment of 1935 simply extended the allowance to stepchildren, if any, and in that case reduced the widow's allowance to $1,000.

The original act and all amendments contain the spefic requirement of the widow's residence, and no one of them specifically extends it to the children. But if our statement in the De Quintana case was correct as applied to the act of 1915 it is equally correct as to the original and each amendment, including that of 1935. Moreover, all reasons applicable to the exclusion of nonresident widows are applicable to nonresident children. The reading of these acts, in the light of the foregoing, forces the conclusion that in each the necessity of residence of the children claiming the allowance is implied. No right is granted, and no reference made, in any of these acts to a nonresident widow. The words always are "a widow residing in this state," and in each the grant to the children is "the same rights and allowances as a widow." Hence if the widow had no rights because of nonresidence the children would be in a like situation.

Such is the rule followed in the leading case on the subject reported in A. L. R. The "annotation" collects authorities on both sides of the question and lists Colorado, on the strength of the Bubser case, supra, among those holding residence essential. *White v. Bickford,* 146 Tenn. 608, 244 S. W. 49, 26 A. L. R. 129, 132, 134.

Our conclusion therefore is that the trial court was in error in holding residence immaterial and refusing to determine it.

The judgment is accordingly reversed and the cause remanded for further proceedings in harmony herewith.

MR. JUSTICE KNOUS and MR. JUSTICE OTTO BOCK concur.