ALICE HUMPHREYS EVANS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35130. Promulgated March 20, 1953.

*Sydney E. Shuteran, Esq.*, for the petitioner.
*Melvin A. Bruck, Esq.*, for the respondent.

### OPINION.

RICE, *Judge:* The respondent determined a deficiency in income tax for the year 1948 in the amount of $821.47.

The sole issue is whether monthly support payments received by petitioner in 1948, pursuant to an interlocutory decree of divorce under the laws of Colorado, constitute taxable income to petitioner under section 22 (k) of the Internal Revenue Code.

All of the facts were stipulated, are so found, and are incorporated herein.

Petitioner is an individual, residing in Denver, Colorado. She filed her Federal income tax return for the year 1948 with the collector of internal revenue for the district of Colorado.

Petitioner and John Evans, Jr. (hereinafter referred to as John), were married in Denver, Colorado, on January 3, 1938. Three children were born of this marriage. Petitioner and John lived together continuously as husband and wife until the year 1947 when they were separated and she filed an action for divorce in the District Court in and for the City and County of Denver and State of Colorado.

On December 5, 1947, petitioner and John entered into a property settlement agreement, reading in part as follows:

*Article I*

Pending the hearing on the application for divorce in the proceedings now instituted by the wife against the husband and the entering of a final decree of divorce or the final refusal of the court to make and enter such a decree within one year from this date—

   \*      \*      \*      \*      \*      \*      \*

(e) on or before the fifth day of December, 1947, and monthly thereafter, the husband shall pay to the wife the sum of Six Hundred Twenty-five Dollars ($625.00), to be used by her as alimony pendente lite, and the husband shall pay to the wife the sum of One Hundred Twenty-five Dollars ($125.00) per month for each child for the support, maintenance, comfort and happiness of the three minor children, without any obligation on the part of the wife to account to the huband therefor:

   \*      \*      \*      \*      \*      \*      \*

(j) the provisions of this Article I of this agreement concerning temporary, separate maintenance or alimony shall (except as provided by Paragraphs (c),

(h) and (i) above) entirely cease and terminate whenever a final decree of divorce in the divorce proceedings now pending shall be entered, or in any event within one year from date, and the remainder of this agreement shall be and constitute the final, complete, and permanent property settlement after the final decree is entered, and entirely supersede any and all provisions concerning temporary maintenance contained in Article I of this agreement. But if a final decree of divorce shall for any reason whatsoever not be made and entered in the pending divorce proceedings within one year from date, or either party dies before said final decree, the provisions of this Article I of this agreement (except Paragraphs (c), (h) and (i) above) shall cease and terminate and become of no force and effect, none of the remaining provisions of this agreement shall become effective, and the rights of both parties shall remain and be as they were prior to the execution of this agreement.

### Article II

Upon the entry of the final decree of divorce, the following provisions shall become and remain effective:

\*   \*   \*   \*   \*   \*   \*

2. *Payments to wife.*

On or before the fifth day of the next calendar month following the entry of the final decree of divorce, and monthly on or before the fifth day of each succeeding month thereafter, the husband, during his lifetime, shall pay to The International Trust Company, and thereafter there shall be paid only as provided in Paragraph 5 of the Article II, hereof, for the account of the wife, until her death or re-marriage, which ever shall first occur, the sum of Six Hundred Twenty-five Dollars ($625.00), but upon her death or re-marriage, any obligation to make any further payments for the benefit of the wife shall absolutely cease and terminate.

On December 10, 1947, the Colorado trial court entered its interlocutory decree of divorce, providing in part as follows:

It is ORDERED, ADJUDGED and DECREED by the court, that an absolute divorce should be granted to the plaintiff, and an Interlocutory Decree of Divorce is hereby entered, dissolving the marriage of plaintiff and defendant six months after the date of this Interlocutory Decree.

It is EXPRESSLY DECREED by the Court that during such six months period after the signing of this Interlocutory Decree the parties hereto shall not be divorce [*sic*]; shall still be husband and wife, and neither party shall be competent to contract another marriage anywhere during such period, and the Court during all of said period does hereby retain jurisdiction of the parties and the subject matter of this cause and upon verified petition or on motion of either party, or upon its motion, for good cause shown, after a hearing, may set aside this Interlocutory Decree.

THE COURT FURTHER FINDS:

That the parties hereto have entered into a property settlement dated December 5, 1947 which provides among other things for the future care and support of the plaintiff and three children, for a complete and final property, alimony and financial settlement between the parties hereto and for the disposition of all the interest of each of the parties hereto in the property of the other; and that said agreement has been exhibited to the Court:

It is FURTHER ORDERED, ADJUDGED and DECREED that the terms and conditions thereof are fair and equitable and constitute a full, final, complete and adequate settlement of the matters contained therein; and the Court hereby orders and directs both parties hereto to carry out the terms of said settlement agreement.

A final decree of divorce was entered by the trial court on June 11, 1948, reading in part as follows:

It Is Ordered, Adjudged and Decreed by the Court, that more than six (6) months' time has elapsed since the entry of said Interlocutory Decree, and that said Interlocutory Decree has become and now is a Final Decree of Divorce, made and entered upon the terms and conditions contained in the Interlocutory Decree, or any modification or change thereof subsequently made by the Court.

Petitioner received $3,750 in monthly payments from John during the 6-month period in which the interlocutory decree was in effect. Such payments were made pursuant to the settlement agreement and the terms of the interlocutory decree.

In her income tax return for 1948, petitioner reported income in the amount of $3,750, and attached the following explanation:

Pursuant to Section 29.22 (k) 1, there is included in the gross income of the tax payer the amount of alimony which she received subsequent to the final decree of divorce (June 5*, 1948). Temporary alimony paid prior thereto is excluded.

*The final decree was dated June 11.

In his notice of deficiency, the respondent determined that the $3,750 received by petitioner while the interlocutory decree of divorce was in force constituted taxable income to her under section 22 (k) of the Code, and determined a deficiency thereon.

Section 22 (k) of the Code provides in part as follows:

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * *. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection [with certain exception not applicable here] * * *.

Chapter 56, Volume 2, 1935 Colorado Statutes Annotated provides in part as follows:

Sec. 13. Courts to enter decree within 48 hours—Parties may be divorced 6 months after interlocutory decree.—Within forty-eight (48) hours after return of a verdict by a jury, if the case has been tried to a jury, or within forty-eight (48) hours after the close of the trial of a case, if tried to a court, or within

forty-eight (48) hours after the denial of a motion for a new trial, if a motion for a new trial has been filed, the court shall enter, if no divorce is to be granted, a judgment or decree dismissing the action. If however, a divorce ought to be granted, the court shall enter an interlocutory decree, providing that the parties to such action shall be divorced six (6) months after the date of such interlocutory decree. During such six (6) months period the parties shall not be divorced and neither party shall contract another marriage during such period. During such period the court may, upon motion or petition of either party to the action, or upon its own motion, for good cause shown after a hearing, set aside such interlocutory decree. Such interlocutory decree shall be a final order as of the date of its entry.

\*     \*     \*     \*     \*     \*     \*

Sec. 17. Final decree of divorce.—Six (6) months after the entry of an interlocutory decree, it shall be and become a final decree of divorce, unless such interlocutory decree shall have been duly set aside, or an appeal has been taken, or a writ of error issued. No other decree shall be needed or required but the court may enter any other decrees or orders in such action which it may deem proper.

The question involved in the present case concerns the taxability of payments made by a husband to his wife during the period following the determination that a divorce should be entered (after considering the merits of the case) and the time when the divorce decree becomes final. The disposition of such question is controlled by our recent decision in *Marriner S. Eccles*, 19 T. C. 1049. In that case, the taxpayer's wife was granted an interlocutory decree of divorce in the State of Utah, on August 2, 1949, which decree became final after the expiration of 6 months. We held that, under the laws of Utah, the taxpayer and his wife were still husband and wife at the close of the taxable year 1949 and were entitled to file a joint return under section 51 (b) of the Internal Revenue Code.

While it is true that the instant case arises under a different section of the Code, the basic question involved is the same. The law of the State of Colorado is similar to that of Utah. If, during the period of the interlocutory decree, one of the parties dies, the surviving spouse is entitled to letters of administration since the divorce action abates with the death of one of the parties and there is no "status of marriage" upon which a decree of divorce can operate. *In re McLaughlin's Estate*, 117 Colo. 67, 184 P. 2d 130 (S. Ct. Colo. 1947). And, as the court said in *Doty* v. *Doty*, 103 Colo. 543, 88 P. 2d 573, 574 (S. Ct. Colo. 1939), "under the statute and the express provisions of the interlocutory decree, the parties were still married and might lawfully have cohabited together as husband and wife." For reasons stated in *Marriner S. Eccles, supra*, we hold that respondent erred in including in petitioner's income the amounts paid to her during the period following the entry of the interlocutory decree and prior to the time the decree became final.

*Decision will be entered for the petitioner.*