[Civ. No. 14079. First Dist., Div. Two. Mar. 29, 1950.]

MARJORIE E. DANZ, Plaintiff and Appellant, v. RALPH DANZ, Defendant and Appellant.

Newell J. Hooey and Abraham Setzer for Plaintiff and Appellant.

Wm. E. Barden and Hugh F. Mullin, Jr., for Defendant and Appellant.

GOODELL, J.—In proceedings instituted in 1947 under section 685 of the Code of Civil Procedure to enforce a judgment after the lapse of five years from its entry, an execution was ordered for $810 (and interest) covering arrearages

which accrued prior to July 11, 1924. Cross appeals were taken.

The marriage of Ralph and Marjorie E. Danz was dissolved by a final judgment of divorce dated November 2, 1923, which awarded the custody of Barbara, their minor daughter, to the mother and ordered the father to pay $30 a month "as alimony and for the maintenance of said minor child." The interlocutory judgment failed, as did the final, to apportion alimony and child support.

On July 11, 1924, Mrs. Danz married Edward Arata, and Barbara lived with them (see Civ. Code, § 209) until she attained her majority in 1939.

From the entry of the interlocutory judgment until Barbara's majority defendant paid nothing at all under the $30 order.

No attempt was made after Mrs. Danz remarried to have the judgment modified so as to fix an amount payable thenceforth solely for the maintenance of Barbara, and it remained throughout her minority just as originally written.

### The Appeal of Marjorie E. Arata

The order under review directed execution to issue for the 27 months elapsing between the interlocutory judgment and plaintiff's remarriage, at the rate of $30 a month. Plaintiff does not, of course, complain of this. She appeals from the order insofar as it refuses an execution for the monthly arrearages accruing from her remarriage to the time when the daughter reached majority.

Section 139, Civil Code, provides ". . . Upon the remarriage of the wife, the husband shall no longer be obligated to provide for her support but such remarriage shall not affect his duty to provide for the maintenance of the children of his marriage."

That part of the section was added in 1933, some 10 years after the Danz divorce, but as said in *Hansen* v. *Hansen,* 93 Cal.App.2d 568, 571 [209 P.2d 626], it "merely enacted into statutory form a rule of public policy recognized long prior to 1933 by judicial decisions." Such decisions are *Cohen* v. *Cohen,* 150 Cal. 99 [88 P. 267, 11 Ann.Cas. 520], *Parker* v. *Parker,* 203 Cal. 787, 794 [266 P. 283], and *Atlass* v. *Atlass,* 112 Cal.App. 514 [297 P. 53]. Such extraordinary circumstances as are suggested in the decisions, which might create rare exceptions to that rule, are not present here since the record affirmatively shows that plaintiff has been supported by

her present husband. The record shows, also, that Barbara has been supported by him, although at "great self-sacrifice and deprivation." The remarriage, then, terminated defendant's alimony obligation as of July 11, 1924.

There can be no question that defendant remained obligated to support his daughter, but nobody obtained a modification of the judgment (Civ. Code, § 138) to make it speak anew respecting the changed situation. Thus the case in all essential respects is similar to *Hale* v. *Hale,* 6 Cal.App.2d 661 [45 P.2d 246], where there was the same kind of blanket order, and where, similarly, the wife had remarried and the children had attained majority. The lower court there, acting under section 685, ordered an execution for $5,735 and on appeal the court said "It appears . . . that at the date of the remarriage of plaintiff, there was then due upon the judgment the sum of $2,530. No good reason appears why defendant should not be compelled to pay this amount." The lower court was directed to amend its order downward to $2,530. What was thus ordered on that appeal is precisely what the trial court ordered here. The following language in the Hale opinion, page 664, exactly fits this case: "There is no doubt that during the minority of his children and while the plaintiff was unmarried, he should have complied with the judgment of the court. The aid of this court should not now be extended to him so that he may avoid this just obligation. To determine what portions of the entire amount during the later years after the remarriage of plaintiff should be allowed for the support of Earl who attained his majority in August, 1932, would be to indulge in speculation and guess and such determination is clearly not the province either of this court or of the trial court. (*Parker* v. *Parker, supra.*)"

In the Parker case, the divorce judgment, entered in 1912, contained a blanket order for $40 a month for the support of the wife and minor daughter. The wife remarried, *the daughter became a member of the new family* (see Civ. Code, § 209), and in 1922 attained her majority. Three years later, in 1925, plaintiff moved under section 685 for an execution for arrearages. In that proceeding the court ordered an execution to issue for $1,200, which was $20 a month for the five years next preceding the daughter's majority. The basis for this reduction from $40 to $20 a month does not appear. Such order was reversed because it was in effect a retroactive modification of the judgment. ■ With no power to modify the judgment retroactively, as there held, the only alternative

remaining in the instant case was that of enforcing *in toto* the $30 order, an *indeterminable part of which was avowedly for alimony,* for a period of approximately 15 years, during all of which time the judgment creditor was married to, and supported by, her second husband. This presented to the court somewhat of a dilemma in a case addressed wholly to its discretion. The enforcement of the judgment had ceased to be a matter of right about 1928 when the five-year period expired; when the motion was heard in 1948 the plaintiff's right to alimony had been gone for about 24 years, and her right to receive maintenance money for the child had been gone for almost nine years.

We might add that in the Parker case, as in this, the daughter had lived as one of the family of her mother and stepfather for most of the time during her minority, and the court (203 Cal. 793-4) deemed that to be one of the factors "pertinent in the consideration by the trial court of the application and in the determination as to what extent, if at all, the relief should have been granted in the exercise of a wise discretion." Presumably the court did likewise in deciding this motion.

The case of *Saunders* v. *Simms,* 183 Cal. 167 [190 P. 806], relied on by plaintiff, is not in point since the order there was not a blanket one for alimony and child support, but one merely for the payment to the mother of $15 a month for the child's support. The fact that the mother had remarried was entirely immaterial.

As appears earlier, the court in the present case enforced the judgment up to the time of plaintiff's remarriage. It cannot be said on this record that there was any abuse of discretion in its refusal to enforce it beyond that time, particularly in view of the fact that the court could not, at the time it acted, (a) modify the blanket order, or (b) enforce the payment of alimony 24 years after the remarriage.

### The Appeal of Ralph Danz

■ The appellant Danz contends that the court abused its discretion in ordering execution in that the affidavits in support of plaintiff's motion failed to set forth sufficient reasons for her failure to proceed under section 681 within the five years therein limited. *Butcher* v. *Brouwer,* 21 Cal.2d 354, 358 [132 P.2d 205], holds that the 1933 amendment of section 685 places the burden of showing such reasons on the judgment creditor.

Plaintiff's affidavit showed that her attorney had unsuc-

cessfully sought temporary support and maintenance for her and her daughter and had informed her "and she verily believed that the defendant had no money or property with which to comply with any order . . . and that said attorney was unable to enforce the payment thereof."

In his affidavit the attorney deposed: "That prior to the trial . . . affiant caused said defendant . . . to be served with an order to show cause why he should not . . . pay the plaintiff alimony, child support, counsel fees and court costs, pendente lite, all to no avail, the defendant having claimed that he was disabled, unemployed and without means or the ability to meet any order" and that "subsequent to the entry of each of said decrees, by diligent search and inquiry which included negotiation with the . . . attorney for said defendant [he] endeavored to enforce said decrees but without success." Further, that at no time subsequent to the decrees could he "learn of any property owned by said defendant not exempt from execution which could be levied upon under such process, and based thereon avers that the issuance of execution during the time limited by section 681 . . . would have been futile."

These averments in the affidavits of plaintiff and her former attorney do not show, as counsel claim they do, mere "gossip among mutual friends and business and social acquaintances." They relate to investigations made by plaintiff's then counsel, in court and out of court, respecting defendant's ability to pay, or to respond to an execution if issued. They relate, moreover, to *advice of counsel* upon which plaintiff acted, which can hardly be called mere gossip among business acquaintances. The situation was not at all comparable with that in *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210], relied on by plaintiff.

In her affidavit plaintiff further deposed: "That the defendant contended that he was ill and disabled by arthritis and unable to work and was dependent upon the largess of his father Henry Danz, for his support and maintenance."

In an affidavit filed by defendant's father he deposed: "That some time in 1924 or thereabouts, defendant came to live with affiant at the home of affiant at Portola . . . that at said time, defendant was totally crippled and unable to do any kind of work, and was suffering from arthritis; that plaintiff knew of defendant's physical condition; that Ralph and affiant lived together until early in 1932, to wit: the month of April, at which time affiant moved his home to Lily Avenue . . . San Mateo . . . and that Ralph accompanied affiant to said Lily

Avenue place; that at all time and continuously until July, 1940, Ralph lived with affiant at affiant's home on said Lily Street; that Ralph's economic and physical condition were very poor, and until July, 1940, Ralph was unable to be gainfully employed, knowledge of which crippled condition was had by plaintiff.''

The father's purpose in making this affidavit was of course to aid his son, but although so designed his affidavit not only corroborated the briefer statements contained in plaintiff's affidavit and in that of her former attorney, but decidedly amplified and augmented the showing before the court and cured any deficiencies in plaintiff's affidavits. From the father's affidavit alone the court could have concluded that defendant's disability and inability to pay not only continued throughout the five-year period but thereafter until 1932, and even beyond that, since he says ''until July, 1940, Ralph was unable to be gainfully employed, knowledge of which crippled condition was had by plaintiff.''

From reading these three affidavits (all uncontradicted) the court could have concluded that plaintiff (to quote from *Butcher* v. *Brouwer, supra,* p. 358) had followed ''available information to the point where a reasonable person would conclude that there was no property subject to levy'' within the five-year period.

The authorities hold that even after the five-year period the court may still deny the judgment creditor its process if the debtor shows circumstances occurring subsequent to that period upon which, in the exercise of a sound discretion, it should conclude that he is not then entitled to collect his judgment. (*Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 200 [200 P.2d 529].)

The record shows that in 1930 plaintiff instituted proceedings on the criminal side to have defendant punished for the nonsupport of the minor child, and that 14 hearings were held without success but at which defendant's father testified that he was then supporting defendant and his second wife. In such hearings, the resources of defendant, if any, would have been uncovered. Moreover in the affidavit of defendant's father defendant's inability to work up to 1940 is shown, from which it could be inferred that he had no resources.

In the briefs of defendant there is a statement that in 1940 he owned an improved piece of real estate, but such statement

is not borne out by the record itself. In the briefs there are statements, also, that defendant had an automobile, but the record itself makes no showing of the person in whose name it was registered, or of any other tangible fact indicating that it was discoverable or would have been available to a levy of execution. In short, there is nothing in the record to indicate that at any time prior to shortly before the proceedings instituted in 1947 defendant had any assets whatever.

No time need be consumed in discussing the question whether the existence of the uncollected judgment (of 1927) for $119.25 held by another creditor did, or did not, furnish plaintiff a sufficient reason, or an added one, for not pressing earlier for an execution. Further it may be conceded that the affidavit of plaintiff's present counsel, employed as late as 1947, sheds little or no light on defendant's ability to respond to the order from 1922 to 1927 or 1928.

It may be conceded, also, that the affidavits filed on behalf of plaintiff contain some hearsay, opinions, conclusions, and irrelevant and immaterial averments (as do those of defendant). ■ Defendant's motion to strike out a series of averments was denied, and an appeal was taken from that order. There was no error therein, since, as was said in *Pemberton* v. *Pemberton,* 95 Cal.App.2d 472, 478 [213 P.2d 118] (a case under § 685): "While there were certain portions of the statements in the affidavits which might well have been stricken on the theory that they were conclusions, there were sufficient proper allegations remaining to justify the consideration of their merits." Such proper allegations are found in the affidavits filed by both sides as already appears, and it is to be presumed that the court based its action on those allegations, not on the improper ones.

"Whether or not a creditor has exercised due diligence is for the trial court to determine in its discretion, and its determination will not be disturbed in the absence of a clear abuse of discretion." (*Di Corpo* v. *Di Corpo, supra,* 33 Cal.2d 195, 200.) We find no such abuse in this case.

■ Finally, defendant contends that the concluding clause of section 685 bars, in any event, any action on the judgment. That clause reads: ". . . nothing in this section shall be construed to revive a judgment for the recovery of money which shall have been barred by limitation at the time of the passage of this act." That question is settled contrary

to defendant's contention by the case of *Greeley* v. *Suey Sing Benevolent Assn.*, 28 Cal.App.2d 536, 538 [83 P.2d 54].

The orders appealed from are affirmed.

Nourse, P. J., and Dooling, J., concurred.

Plaintiff and appellant's petition for a hearing by the Supreme Court was denied May 25, 1950.