T.C. Memo. 1996-128

UNITED STATES TAX COURT

EVELYN R. AMBROSE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WADE B. AMBROSE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 26033-93, 1678-94.    Filed March 14, 1996.

<u>James T. Burnes</u>, for petitioner in docket No. 26033-93.

<u>Theodore J. England</u>, for petitioner in docket No. 1678-94.

<u>James G. LeBloch</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in
petitioner Evelyn R. Ambrose's 1990 and 1991 Federal income tax
of $35,849 and $38,239, respectively, and accuracy-related

penalties pursuant to section 6662(a)[1] in the amounts of $7,170 and $7,648, respectively. Respondent also determined deficiencies in petitioner Wade B. Ambrose's 1990 and 1991 Federal income tax of $58,800 and $67,053, respectively, and accuracy-related penalties pursuant to section 6662(a) in the amounts of $11,760 and $13,411, respectively. These cases were consolidated for purposes of trial, briefing, and opinion.[2] After concessions, the issues for our consideration are: (1) Whether amounts paid as "family support" pursuant to a decree by a State court were alimony and therefore deductible by Wade B. Ambrose under section 215, or whether they were child support and excludable from Evelyn R. Ambrose's gross income; and (2) whether Wade B. Ambrose is liable for the accuracy-related penalty for negligence or intentional disregard of rules or regulations pursuant to section 6662(a) for the taxable years 1990 and 1991.[3]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent has placed herself in the role of a stakeholder to the extent that she merely seeks consistent treatment regarding the parties in controversy.

[3] The parties have stipulated that Evelyn R. Ambrose is not subject to the accuracy-related penalties.

FINDINGS OF FACT

Petitioners Evelyn R. Ambrose[4] (Ms. Ambrose) and Wade B. Ambrose (Mr. Ambrose), when the petitions in these cases were filed, separately resided in Pacific Palisades, California, and Westlake Village, California, respectively. Petitioners were married on November 3, 1967, and had two children during their marriage--W. Wade Ambrose II and Christa Ambrose, born, respectively, on August 6, 1971, and April 25, 1974. Sometime between 1985 and 1987, petitioners separated. After their separation, the two minor children resided with Ms. Ambrose. On April 1, 1987, Mr. Ambrose commenced a proceeding for divorce in the Superior Court for Ventura County, California (Superior Court). A divorce decree was filed on April 5, 1994, dissolving the marriage.

During the separation, Mr. Ambrose provided for the support of Ms. Ambrose and their children. Mr. Ambrose deposited $6,000 per month in a household account from which Ms. Ambrose would pay her and the children's expenses. When additional funds were required for the children's private school tuition, Mr. Ambrose provided Ms. Ambrose with the additional amounts. Mr. Ambrose paid the children's allowances directly to them. On February 20,

---

[4] The record reflecting the divorce proceedings refers to "Evelyn S. Ambrose". The petition before this Court refers to "Evelyn R. Ambrose". The parties have not questioned whether there is a discrepancy and, for purposes of this case, we treat Evelyn S. and Evelyn R. as one and the same.

1989, petitioners entered into a stipulation which was incorporated into a temporary order dated March 13, 1989 (temporary order). The temporary order provided that Mr. Ambrose was to pay Ms. Ambrose "the sum of $17,500 per month as family support". Ms. Ambrose understood that the payments were being made to provide financial support for her and the children. After the issuance of the temporary order, Mr. Ambrose was no longer available as a source for expenses in excess of the $17,500 monthly payment, and he also ceased paying the children their allowances.

On or about February 9, 1990, Ms. Ambrose filed for a modification of the temporary order seeking an increase in the $17,500 monthly payments. In its memorandum of opinion filed July 3, 1990, the Superior Court denied Ms. Ambrose's motion to increase the monthly payments.[5] The Superior Court indicated its unsolicited views suggesting how the undesignated payments might be broken down.

> [Ms. Ambrose's] * * * motion to modify * * * [the
> temporary] order is denied. Because "family support"
> is allowed only by stipulation, the court does need to
> inquire if Ms. Ambrose, wishes the $17,500 amount
> broken down into child support and spousal support. If
> she does, I propose that it be broken down to $8,000

---

[5] The parties' stipulations refer both to a memorandum of opinion dated June 29, 1990, and an order dated July 3, 1990, by the Superior Court. However, the record only reflects a "Memorandum Of Opinion" which is dated as filed July 3, 1990. Hence, we assume that the June 1990 memorandum of opinion and the July 1990 order are one and the same.

child support, $9,500 spousal support.  If both parties are willing, it will stay as family support.

On October 11, 1990, Ms. Ambrose filed an Income and Expense Declaration (declaration) with the Superior Court which was signed under penalties of perjury.  The space provided for amounts received as spousal support was left blank.  In an exhibit attached to this declaration, Ms. Ambrose stated that the monthly tax on $9,500 was $3,325.

On October 12, 1990, Ms. Ambrose filed a request with the Superior Court for an order to modify the temporary order, pending appeal.  The request form contains boxes that are provided to show applicability of "Child Support", "Spousal Support", and "Other", all of which were checked.  On the following page, the boxes for "Spousal Support" and "Attorney Fees" (pending appeal) were also checked.  In an accompanying affidavit Ms. Ambrose listed estimated taxes, based on her accountant's calculations, of $3,325 on "spousal support" of $9,500 as one of the expenses.

On April 10, 1991, the Superior Court entered an order denying Ms. Ambrose's request.  The Court's order included the following statement:

> Because "family support" is allowed only by stipulation, the Court does need to inquire if * * * [Ms. Ambrose] wishes the $17,500 family support amount broken down into child support and spousal support.  If she does, it is to be broken down $8,000.00 child support, $9,500.00 spousal support.

Sometime before the issuance of the April 1991 order, Ms. Ambrose appealed the Superior Court's decision to the Court of Appeal of the State of California for the Second Appellate District, Division 6 (court of appeal).  In its review of the appeal, the court of appeal twice noted that the Superior Court "suggested" that $9,500 of the family support payments be allocated to spousal support.  The figures proposed by the Superior Court were utilized by the court of appeal in determining whether the undesignated family support payments were unreasonable.  The court of appeal stated that Ms. Ambrose did not demonstrate that her "present needs" were greater than the amount of the spousal support of $9,500.  Also, the expenses for the children were deemed to be adequately covered by the child support allocation of $8,000.  Ultimately, in an opinion filed May 15, 1991, the court of appeal rejected Ms. Ambrose's contention that the amounts were unreasonable and affirmed the Superior Court's decision.[6]

_____

[6] A footnote on the first page of the opinion of the court of appeal states:

> The order, based on the trial court's July 1990 memorandum of opinion, was filed in April 1991 after appellant filed her notice of appeal.  Since the court's decision in the memorandum of opinion was made prior to the notice of appeal, and since the April order does not amend that decision in any way, we may treat the notice of appeal as a premature but valid notice from the April order.  [Citation omitted.]

(continued...)

On August 27, 1992, Ms. Ambrose filed another declaration with the Superior Court under penalties of perjury. Ms. Ambrose declared $9,500 as the amount received for spousal support and $8,000 as child support. Taxes of $3,325 were listed under incidental expenses. Pursuant to the temporary order, Mr. Ambrose paid the sum of $17,500 per month from March 1989 through July 1993. Mr. Ambrose continued to make the full payments after the eldest child began attending college in the fall of 1990. The second child left Ms. Ambrose's residence to attend college in August 1992. From August 1993 until December 1993, Mr. Ambrose paid Ms. Ambrose $9,500 per month. At that time, Mr. Ambrose began directly supporting the youngest child then in college. Subsequently, Ms. Ambrose ceased providing support for that child.

For the taxable years, 1989, 1990, and 1991, Ms. Ambrose filed Federal income tax returns reporting $95,000 in taxable income. Ms. Ambrose also forwarded all copies of the declarations and income tax returns filed with the Superior Court to Mr. Ambrose's attorney.

---

[6](...continued)
We interpret this footnote to mean that the opinion of the court of appeal, originally based on the memorandum of opinion encompasses within its ambit the Apr. 1991 order of the Superior Court.

OPINION

We consider here whether certain payments pursuant to a temporary order are to be treated as alimony. The temporary order and subsequent related documents contain a single amount designated solely for "family support", followed by the judge's proposal to divide the stated amount into separately designated amounts for child support and spousal support, respectively. Petitioner Ms. Ambrose's primary argument is that part of the payments were "fixed", within the meaning of section 71(c)(1), as child support payments and are therefore not includable in her income or deductible by Mr. Ambrose. Specifically, she asserts that the temporary order for generic family support payments was subsequently modified and converted to separate spousal and child support payments. Ms. Ambrose, in the alternative, argues that child support payments are not terminated upon the payee's death so that the section 71(b)(1)(D) requirements are not met and, hence, the payments do not constitute alimony includable in her income. Petitioner Mr. Ambrose argues that, since the temporary order provides solely for family support and because the court did not order separate allocations for child support or alimony, he is entitled to deduct the payments. In order to determine the proper tax treatment of the payments in question, we must analyze and interpret two State court orders.

<u>Petitioners' Primary Arguments</u>

Generally, gross income includes amounts received as alimony or separate maintenance payments. Secs. 61(a)(8), 71(a). Section 71(c) provides that section 71(a) does not apply to any payment that is fixed by the terms of the divorce or separation instrument as payable for the support of the children of the payor spouse. If alimony is includable in the payee spouse's gross income under section 71(a), the payor spouse is allowed to deduct the amount of the alimony paid. Sec. 215(a) and (b).

Section 71(b)(1) defines alimony or separate maintenance as any cash payment meeting the four criteria provided in subparagraphs (A) through (D) of that section. Accordingly, if any portion of the money paid to Ms. Ambrose meets all four enumerated criteria, that portion is alimony.[7]

---

[7] Sec. 71(b)(1) provides:

SEC. 71(b) ALIMONY OR SEPARATE MAINTENANCE PAYMENTS DEFINED.--For purposes of this section--
    (1) IN GENERAL.--The term "alimony or separate maintenance payment" means any payment in cash if--
        (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
        (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
        (C) in the case of an individual legally
                                    (continued...)

Section 71(b)(1)(B) requires that the "divorce or separation instrument * * * not designate such payment as a payment which is not includible in gross income * * * and not allowable as a deduction under section 215".

Section 71(c)(1) provides that section 71(a) shall not apply to that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of the children of the payor spouse.

In general, child support cannot be inferred from intent, surrounding circumstances, or other subjective criteria for purposes of section 71(c)(1). Rather, the statutory directive that child support payments be "fixed" is taken literally. The Supreme Court in Commissioner v. Lester, 366 U.S. 299 (1961), held that the requirement in section 71 that child support payments be "fixed" should be taken literally and that child

[7](...continued)
separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse * * *

support may not, therefore, be left to "determination by inference or conjecture."  Id. at 306.[8]  Accordingly, no part of a payment may be excluded from a recipient spouse's income under section 71(c)(1) unless the operative divorce instrument expressly specifies or "fixes" a sum certain or percentage of the payment for child support.  Consequently, in the case of unallocated or undifferentiated support for a wife and children, none of the amount is treated as child support under section 71(c)(1).

In applying the principle of Commissioner v. Lester, supra, this Court has repeatedly refused to allow inference, intent, or other nonspecific designations of payments as child support to override the clear intent of section 71(c)(1).  See, e.g., Mass v. Commissioner, 81 T.C. 112, 123 (1983); Blakey v. Commissioner, 78 T.C. 963 (1982); Giordano v. Commissioner, 63 T.C. 462 (1975); Grummer v. Commissioner, 46 T.C. 674 (1966).

Finally, an amount otherwise not "fixed" under section 71(c)(1) and Lester will be considered child support if the spousal support provisions of the divorce instrument reduces payments dependent on a contingency related to a child.  More

---

[8] See, however, discussion concerning sec. 71(c)(2) in the portion of this opinion concerning petitioner's alternative argument, infra.

specifically, section 71(c)(2) provides a lesser standard for certain payments to be classified as child support and thus excepted from the strict requirements of section 71(c)(1) and classification as alimony under section 71(b)(1).

The parties concede that the requirements of section 71(b)(1)(A) and (C) are met. They disagree about whether section 71(b)(1)(B) and (D) has been satisfied, as well as the applicability of section 71(c)(1).

The payments at issue here were made according to a stipulation between the parties that was incorporated into the temporary order. The amounts for spousal support and child support were not specifically delineated, and, instead, Mr. Ambrose was to pay Ms. Ambrose "the sum of $17,500 per month as family support". In two subsequent attempts to modify the temporary order, the Superior Court, in its opinion, stated that the $17,500 family support was derived from the parties' stipulation, and, if requested to break it down into separate elements, the Court proposed $8,000 child support and $9,500 spousal support.

Ms. Ambrose argues that the Superior Court's actions in the proceedings for divorce modified the temporary order or, in other words, "fixed" the child support portion of the monthly family support payments for purposes of sections 71(b)(1)(B) and (c)(1).

Thus, Ms. Ambrose argues that the portion of the payments attributable to child support is not taxable to Ms. Ambrose and not deductible by Mr. Ambrose. The parties disagree about the effect of the Superior Court's proposed allocation of the family support payments in the opinions issued in response to Ms. Ambrose's requests for an increase in the amounts.

Ms. Ambrose argues that the memorandum of opinion and the April 1991 order provided her with an option to seek modification of the temporary order and presented her with a recommended breakdown of the unallocated family support payments if she chose to pursue that option. The Superior Court stated that if Ms. Ambrose "wishes" an allocation, "it is to be broken down $8,000.00 child support, $9,500.00 spousal support." Finally, the Superior Court also stated that "If both parties are willing, it will stay as family support." We find the Superior Court's proposal to segregate the amounts to be precatory and without effect on the "family support" language in the temporary order.

Neither Ms. Ambrose nor Mr. Ambrose sought an apportionment of the family support payments. Although there were motions involving attorney's fees and seeking increased family support payments, they did not address the allocation of family support payments into separate amounts for child and spousal support.

Ms. Ambrose contends that she could exercise her election without formal action by the Superior Court or an explicit declaration that she chose the suggested allocation set forth by the court. Ms. Ambrose asserts that she expressed her wishes and notified the Superior Court and Mr. Ambrose through her manifestations in her attempts to increase the $17,500 monthly payments. For example, her October 11, 1990, declaration contains a listing of $3,325 as taxes on income of $9,500. Her request for modification filed on October 12, 1990, shows taxes of $3,325 on "spousal support" of $9,500. She also points to her 1989, 1990, and 1991 Federal income tax returns, which were filed with the Superior Court. These returns report $95,000 per year as taxable alimony, which, Ms. Ambrose states, indicates her choice of an allocation. Furthermore, Ms. Ambrose states that neither Mr. Ambrose nor the Superior Court objected to her use of the allocated amounts in the documents she filed.

We do not find Ms. Ambrose's actions to be sufficient to cause a modification of the temporary order. We cannot accept Ms. Ambrose's interpretation of the language of the memorandum of opinion and the April 1991 order. The Superior Court stated:

> the Court <u>does need to inquire</u> if * * * Ms. Ambrose
> wishes the $17,500 family support amount broken down
> * * *. If she does, * * * <u>I propose</u> that it be broken
> down to $8,000 child support, $9,500 spousal support.
> [Emphasis supplied.]

As previously noted, we believe the language to be merely precatory. In other words, we construe the Superior Court to recommend a particular allocation and to request notice if Ms. Ambrose elected this option. It also appears that the agreement of Mr. and Ms. Ambrose would have been necessary to effect a change in their stipulation.

Also, the references in Ms. Ambrose's filings to allocations between spousal and child support were indirect and vague. The October 11, 1990, document contains the implication that the amounts reported as income were solely derived from monthly spousal support of $9,500; however, the space provided for spousal support was left blank. The affidavit accompanying the October 12, 1990, request for modification of the temporary order does, however, contain the statement that Ms. Ambrose received $9,500 in spousal support with estimated taxes paid on that amount. Likewise, the August 27, 1992, document lists $8,000 for child support and $9,500 for spousal support.

Ms. Ambrose in her 1989 Federal income tax return reported the $9,500 proposed monthly amounts set forth in the memorandum of opinion. We note that the tax reporting of items in a particular manner is not probative evidence, but instead represents a self-serving representation. See Old Mission Portland Cement Co. v. Commissioner, 69 F.2d 676 (9th Cir. 1934),

affg. in part and revg. in part 25 B.T.A. 305 (1932), affd. 293 U.S. 289 (1934); Siewert v. Commissioner, 72 T.C. 326, 337 (1979); Times Tribune Co. v. Commissioner, 20 T.C. 449, 452 (1953). Also, there is no evidence that Mr. Ambrose or the Superior Court was privy to or inferred from the income tax returns that she was electing to segregate the family support payments.[9]

Mr. Ambrose continued to make full family support payments after the children had left Ms. Ambrose's residence to attend college and until mid-1993. Mr. Ambrose's unilateral reduction of the family support payments beginning August 1993 was contrary to the Superior Court's temporary order. However, we do not find this to be dispositive of Mr. Ambrose's knowledge or acquiescence in Ms. Ambrose's election to prorate the family support payments. After the children had left Ms. Ambrose's house, no steps were taken to modify the family support payments reflected in the temporary order. Also, Ms. Ambrose is being inconsistent when she argues that she was not required to refund the portion of the payments she designated as child support simply because Mr.

---

[9] We notice that on her 1991 Federal income tax return, Ms. Ambrose reported $95,000 as income. We believe that is an error. If she reported only spousal support as income--based on her allocation that would be $9,500 per month--the correct amount for that year would be $114,000.

Ambrose did not seek modification of the temporary order from the Superior Court on the basis of changed circumstances after both children left her residence.

Approximately 10 months after the memorandum of opinion, the April 1991 order continued to inquire about the suggested allocation. This indicates that the Superior Court was unaware of any new stipulation or election by petitioner prior to that date. The allocated amount contained in the August 27, 1992, declaration was insufficient to apprise the Superior Court of Ms. Ambrose's "wish" or to cause the Court to take any action.

The appellate opinion, likewise, does not support Ms. Ambrose's position that she had the option to unilaterally modify the temporary order. The court of appeal discussed the breakdown proposed by the Superior Court, but refers to the figures as "suggested". Ultimately, no court modified the temporary order or the subsequent opinions regarding the $17,500 "family support".

In applying the principle of Commissioner v. Lester, 366 U.S. 299 (1961), inferences, intent, or other nonspecific designations of payments as child support are insufficient to override the mandate of section 71. The requirement that the child support be fixed is to be taken literally. In this instance, the order expressly references family support payments

that are not allocated between spousal and child support. Based on the record, we must conclude that Ms. Ambrose did not modify or "fix" the child support portion of the monthly family support payments for purposes of section 71(b)(1)(B) and (c)(1).

Petitioner's (Ms. Ambrose) Alternative Argument

Alternatively, Ms. Ambrose argues that part of the family support payments are not alimony because, under California law, a parent's obligation for child support is not terminated upon the custodial (payee) parent's death. To be successful in her argument, Ms. Ambrose would have to show that Mr. Ambrose had no "liability to make such payment for any period after [his] death * * * and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of * * * [Ms. Ambrose]."[10] See sec. 71(b)(1)(D). In that connection, Ms. Ambrose argues that, because Mr. Ambrose would

---

[10] Sec. 71(b)(1)(D), as amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422, 98 Stat. 795, required that the divorce or separation instrument specifically designate that there was no liability to make any payment after the death of the payee spouse. That requirement was deleted by the technical corrections provisions of the Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853, retroactive to the effective date of DEFRA, TRA 86 sec. 1881, 100 Stat. 2914. See also Notice 87-9, 1987-1 C.B. 421, 422. Hence, the divorce or separation instrument need not expressly state that the payment obligations terminate upon the death of the payee spouse if, for example, termination would occur by operation of State law.

remain responsible for child support after the termination of spousal support, this Court should utilize the allocations proposed by the Superior Court.  Ms. Ambrose's argument also raises the tangential question of whether section 71(c)(2) applies if the amount of child support would be contingent due to the terms of the temporary order(s).

In 1984, Congress specifically provided for a statutory exception to the general rule of section 71(c)(1) and the Supreme Court's decision in Commissioner v. Lester, supra.  See sec. 71(c)(2) and generally Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 713 (J. Comm. Print 1985).

Section 71(c)(2) provides generally that the terms of a divorce or separation agreement for the support of children will be treated as "an amount fixed as payable for the support of children of the payor spouse" when any amount of the support payable in the instrument will be reduced, generally, on the happening of a contingency related to the child, such as the child's attaining a certain age, marrying, dying, or leaving school.

In order to address either the section 71(b)(1)(D) or 71(c)(2) possibilities we must look to the effect of State law

because the documents are silent on both of the contingencies under consideration.

State law determines certain rights of the parties, and Federal law determines the Federal income tax consequences of those rights. Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Lucas v. Earl, 281 U.S. 111 (1930); Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987). In this case, the temporary order does not indicate whether the amounts paid were exclusively for Ms. Ambrose or whether the payments would cease upon her death. In this case, we look to State law to determine whether a postdeath legal obligation exists here for purposes of section 71. Id.

California Family Code section 4337 (West 1994) provides that, "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party."

Thus, pursuant to California law, if any portion of the undesignated payment is spousal support, section 71(b)(1)(D) is satisfied in that the payment obligation terminates upon the death of the payee spouse. Hence, if the payor spouse and the payee spouse do not otherwise agree in writing, then California law provides that the support obligation terminates upon the

death of either party or remarriage of the supported party.  Cal. Fam. Code sec. 4337 (1994).  In this case, the Superior Court's temporary order did not incorporate any agreement between the parties that would operate to set aside the otherwise applicable statutory provisions regarding the termination of the obligation of support.  A single monthly payment for family support was ordered, and the court proposed to divide that amount into child support and alimony if the parties wished.  No such division was requested of or directly ordered by the court.

California law, generally, establishes a duty for parents to support their children.  The remedy for willful failure to provide for the children is not automatic or specifically prescribed in the statutes.  Instead, an action must be brought to enforce the parent's duty to support a child.  See Cal. Fam. Code secs. 3900, 4000 (1994).  Once ordered by a court, child support survives the death of the payee custodial parent and continues as an obligation of the payor noncustodial parent.  In re Marriage of McCann, 32 Cal. Rptr. 2d 639 (Ct. App. 1994); In re Marriage of Gregory, 281 Cal. Rptr. 188 (Ct. App. 1991).  Even if the noncustodial parent assumes custody at the time of the custodial parent's death, the support order is not automatically terminated.  In re Marriage of McCann, supra at 641.  The noncustodial parent is required to seek modification of the child

support order based on changed circumstances if he or she believes the death of the custodial parent warrants a modification or termination of the child support order. Id. Accordingly, if any part of the payments was specifically for child support, the definitional requirement of section 71(b)(1)(D) would be satisfied since, pursuant to California law, there would be a liability to make payments after the death of the payee spouse.

California law, however, also provides in the event there is a single stated amount to cover both alimony and child support, the courts cannot determine, after a terminating event, retroactively or as of the date of the application for modification, what proportion of the total award is allocable to alimony and to child support. Danz v. Danz, 216 P.2d 162 (Cal. Ct. App. 1950); Hale v. Hale, 45 P.2d 246 (Cal. Ct. App. 1935). In Danz, the court held:

> "There can be no question that defendant remained obligated to support his daughter, but nobody obtained a modification of the judgment * * *. * * *  To determine what portions of the entire amount during the later years after the remarriage of plaintiff should be allowed for the support of * * * [the child] * * * would be to indulge in speculation and guess * * *" [Danz v. Danz, supra at 164 (quoting Hale v. Hale, supra at 247).]

Accordingly, under California law, the payments meet the section 71(b)(1)(D) requirement and do not fall within the ambit

of the section 71(c)(2) exception.  That is so because California law does not provide for segregation of unallocated or undifferentiated child and spousal support payments.  In other words, the total amounts meet the requirement of section 71(b)(1)(D).  Therefore, Mr. Ambrose is entitled to a deduction for all the family support payments for his 1990 and 1991 tax years, and a like amount is includable in Ms. Ambrose's income for those years.[11]

## Accuracy-Related Penalty Under Section 6662(a)

Respondent also determined that Mr. Ambrose was liable for the accuracy-related penalty pursuant to section 6662(a).  Section 6662(a) imposes a penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  The burden is on the taxpayer to show a lack of negligence.  Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

This issue has been rendered moot for Mr. Ambrose in light of our holding in his favor on the first issue.

---

[11] In light of our holding, we do not reach an argument by Ms. Ambrose that the proposed segregation of family support payments should be made retroactive to March 1989.

Decisions will be entered

under Rule 155.