**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JOHN H. LOVEJOY,

     Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee.

No. 00-9031

**Appeal from the United States Tax Court**
**(No. 8158-97)**

Thomas G. Hodel of Doussard Hodel & Markman, P.C., Lakewood, CO, for
Petitioner-Appellant.

Teresa T. Milton, Attorney, Tax Division (Jonathan S. Cohen, Attorney, Tax
Division, with her on the brief), Department of Justice, Washington D.C., for
Respondent-Appellee.

Before **SEYMOUR** and **EBEL**, Circuit Judges, and **BROWN**,[*] Senior District
Judge.

**EBEL**, Circuit Judge.

---

[*] Wesley Brown, Senior United States District Judge for the District of
Kansas, sitting by designation.

Petitioner-Appellant John H. Lovejoy appeals the tax court's determination that certain support payments he made to his ex-spouse during divorce proceedings were not deductible under the Internal Revenue Code. The payments were unallocated, meaning there was no designation as to whether they applied to child support (which is not deductible) or spousal maintenance (also known as alimony, which is deductible). This case turns on whether Lovejoy's obligation to make these payments would have terminated automatically had his spouse died; they qualify as deductible alimony only if they would have so terminated. Because we predict that the Colorado Supreme Court would hold that these payments would not automatically terminate on the death of Lovejoy's spouse, we conclude that Lovejoy has not met his burden of showing that the payments are deductible. We therefore AFFIRM the tax court.

* * * *

We have jurisdiction to review the tax court's decision under I.R.C. § 7482(a)(1) "in the same manner and to the same extent as decisions of the district courts . . . tried without a jury." We therefore review the tax court's legal conclusions de novo and its findings of fact for clear error. Consolidated Mfg., Inc. v. Comm'r, 249 F.3d 1231, 1236 (10th Cir. 2001). Lovejoy bears the burden of showing that he is entitled to a deduction. Love Box Co. v. Comm'r, 842 F.2d 1213, 1216 (10th Cir. 1988).

2

Under I.R.C. § 215(a), a taxpayer is "allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." The term "alimony or separate maintenance payment" is defined as "any payment in cash if":

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

I.R.C. § 71(b)(1).

In addition, § 71(c)(1) provides that "any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse" is not includible in the recipient's income. Such payments include "amounts specified in the instrument [that are to be] reduced . . . on the happening of a contingency specified in the instrument relating to a child (such as

3

attaining a specified age, marrying, dying, leaving school, or a similar contingency)." § 71(c)(2). Thus, Lovejoy may deduct payments to his ex-spouse only if the payments both meet the alimony definition in § 71(b)(1) and are not child support within the meaning of § 71(c)(1) or (c)(2).

There is no dispute that Lovejoy's payments to his ex-spouse were cash and meet the requirements of § 71(b)(1)(A)-(C). The principle question is whether they satisfy § 71(b)(1)(D) – whether Lovejoy would have been obligated to continue with the payments if his ex-spouse had died.

As originally enacted in 1984, § 71(b)(1)(D) required that this absence of continued liability be stated explicitly in the divorce court's order. In a "technical correction" in 1986, Congress removed the requirement that this be expressed in the order. Payments now satisfy § 71(b)(1)(D) when the divorce order is silent if background principles of state law mandate that the payments necessarily terminate upon the death of the payee spouse. See generally Hoover v. Comm'r, 102 F.3d 842, 845-47 (6th Cir. 1996); Zinsmeister v. Comm'r, 80 T.C.M. (CCH) 774 (2000). Because neither the temporary orders nor the permanent orders in this case expressly state whether Lovejoy's obligations would continue in the event his ex-spouse died, we look to Colorado law.

Colorado has adopted the Uniform Dissolution of Marriage Act ("UDMA"), which states that "[u]nless otherwise agreed in writing or expressly provided in

4

the decree, the obligation to pay future <u>maintenance</u> is terminated upon the death of either party." Colo. Rev. Stat. § 14-10-122(2) (emphasis added). Conversely, the obligation to pay <u>child support</u> does not terminate upon the death of the custodial parent. <u>Abrams v. Connolly</u>, 781 P.2d 651, 656-57 (Colo. 1989) (en banc). The disputed question on appeal is whether, under Colorado law, the death of a recipient automatically terminates the spouse's obligation to make <u>unallocated</u> payments such as those at issue in this case. The tax court ruled that it does not.

There is no Colorado law squarely addressing the treatment of unallocated payments upon the death of the payee spouse. The only on-point cases cited by the parties address California law and are conflicting. <u>Compare</u> <u>Heller v. Comm'r</u>, 103 F.3d 138, 1996 WL 713049, at *3 (9th Cir. 1996) (unpublished) (holding that the obligation to pay unallocated support would automatically terminate upon the recipient's death), <u>and</u> <u>Ambrose v. Comm'r</u>, 71 T.C.M. (CCH) 2429 (Mar. 14, 1996) (same), <u>with</u> <u>Wells v. Comm'r</u>, 75 T.C.M. (CCH) 1507 (Jan. 5, 1998) (holding that the obligation does not terminate upon death). This split of authority interpreting California law is no help to Lovejoy's attempt to show that Colorado law provides for the termination of unallocated payments upon the payee spouse's death.

5

Lovejoy also gains no support from <u>Commissioner v. Lester</u>, 366 U.S. 299 (1961), in which the Supreme Court held that a dissolution agreement "providing for . . . periodic payments must specifically state the amounts or parts thereof allocable to the support of the children" in order to avoid classification as alimony. <u>Id.</u> at 301. The governing statute at that time specifically provided that periodic payments received by a wife pursuant to a dissolution agreement were "'includible in the gross income of such wife'" unless the agreement's terms "'fix . . . a portion of the payment, as a sum which is payable for the support of minor children of such husband.'" <u>Id.</u> at 301 n.1 (quoting I.R.C. § 22(k) (1939)). <u>Lester</u> is unhelpful to our current inquiry because the statutory requirement that the dissolution agreement itself must explicitly allocate a portion of the payment as child support in order for it to be so considered was later deleted from the statute. In its place, Congress enacted the statutory test found in § 71(b)(1). Given that <u>Lester</u> did not consider this new statutory test, it is of no assistance to Lovejoy, who must meet the new statutory test in order to prevail.

Lovejoy's strongest argument is that his ex-spouse's death would have divested the family court of jurisdiction over the divorce action. Therefore, he argues, the temporary order would have abated and he would have had no continuing obligation to make the unallocated payments required by that order. In Colorado, as in most jurisdictions, it is true that, upon the death of a party during

6

the pendency of a divorce action and before a final decree of dissolution is entered, "'the general rule of law is that a divorce action immediately abates.'" In re Marriage of Connell, 870 P.2d 632, 633 (Colo. Ct. App. 1994) (emphasis added) (quoting Estate of McLaughlin v. Craig, 184 P.2d 130, 132 (Colo. 1947)). However, Colorado law provides that "provisions for the support of a child are [not] terminated . . . by the death of a parent obligated to support the child." Colo. Rev. Stat. § 14-10-122(3); see also Abrams, 781 P.2d at 656-57 (holding that custodial parent's death does not terminate non-custodial parent's child support obligations set forth in dissolution decree).

It is not clear under Colorado law which rule trumps the other – i.e., whether the abatement of dissolution proceedings upon a spouse's death would negate temporary orders providing for child support payments. However, we are inclined to believe that the Colorado Supreme Court would hold that temporary orders providing for child support payments, even when included within a general unallocated payment obligation, do survive the death of the recipient spouse. If one spouse dies after a dissolution decree is entered, the court retains jurisdiction to resolve other matters raised in the proceedings. See Burford v. Burford, 935 P.2d 943, 954 (Colo. 1997) (en banc) (citing other Colorado cases holding: 1) no abatement upon death of spouse before permanent orders entered as long as parties agreed the marriage was irretrievably broken; and 2) no abatement when

death occurred while dissolution orders were on appeal). Further, as the tax court recognized, the unallocated support payments required by the temporary order were to continue "until further Order of Court." There is no reason to believe that the death of a spouse negates this language.

The need for child support, which is encompassed by the unallocated payments, will frequently continue beyond the death of the custodial spouse, as reflected in Colorado's requirement that allocated child support continue after the custodial parent's death. If the obligation to make unallocated payments for the benefit of a child ceased at death, and if the noncustodial parent was not immediately given custody of the children, there would be a substantial risk that the children would be without support for some period of time, until a new order could be obtained. This potential hardship to the children is to be avoided under Colorado law. Cf. Colo. Rev. Stat. § 14-10-102(1), (2)(b) (stating that the Colorado divorce laws should be liberally construed to "mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage"). The relevance of these policy considerations does not hinge on whether a final divorce decree has been entered.

Admittedly, there is a substantial likelihood that the parent making unallocated payments will be overpaying for a period of time after the death of the recipient spouse until he or she can have the support order modified because

8

the unallocated payments include maintenance for the deceased spouse. This amount, however, presumably is one that the paying parent can reasonably afford. Cf. id. §§ 14-10-114 (2)(f), -115(1)(e) (stating that the ability of a paying parent to make maintenance and child support payments is relevant to setting the level of support required). Moreover, the paying parent – who has been a party to the underlying divorce proceedings – is likely to be in a better position to ask for a modification of the court orders than any other custodian of the children (for example, the relatives of the deceased spouse), who may not have been involved in those proceedings. And the paying parent could protect his or her interests from the start by asking the court to include specific provisions in the support order for tax purposes. Finally, if the paying parent became the custodial parent, it should not be difficult to get the court to eliminate the unallocated payments entirely.

However, even if we are incorrect in predicting that the Colorado Supreme Court would hold that temporary unallocated payment obligations for both child support and spousal maintenance survive the death of the recipient spouse, we would still uphold the tax court's opinion. Lovejoy bore the burden of proving that his obligation to make unallocated payments would cease upon his ex-spouse's death. Because the divorce court orders are silent and Colorado law is at best unclear on the issue, and likely contrary to Lovejoy's position, he has failed

9

to meet this burden.  See Hoover, 102 F.3d at 848 ("Given the ambiguity of the then-applicable state law as to the termination of payments, we hold that Ohio law does not 'save' the payments in question for purposes of § 71(b)(1)(D).").

Given our conclusion that Lovejoy has failed to establish that the unallocated payments qualify as alimony under § 71(b)(1), we need not determine whether any portion of the payments qualify as child support under § 71(c)(1). The unallocated payments were not deductible, and the tax court's judgment is AFFIRMED.