T.C. Summary Opinion 2012-40

UNITED STATES TAX COURT

GARY L. SCALONE AND SANDRA VIEIRA SCALONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15287-08S.                    Filed May 2, 2012.

<u>Randall P. Andreozzi</u> and <u>Teia M. Bui</u>, for petitioners.

<u>Anne D. Melzer</u> and <u>John M. Janusz</u>, for respondent.

SUMMARY OPINION

HOLMES, <u>Judge</u>:  Gary Scalone and his former wife have a child who lives

most of the year with her.  In their separation agreement, however, she stated that

Gary would be entitled to claim the child as his dependent "[f]or calendar year 2000

and for any taxable years henceforth."  She also promised that if Gary kept current

with his child support payments she would herself fill out an IRS form declaring this and attach it "to her income tax return." Gary kept his side of the deal and was current with his support payments in 2006. His ex, however, refused to sign the IRS form. Gary claimed the child as a dependent and attached a copy of the separation agreement to the joint 2006 return that he filed with his new wife.

We must decide whether that's good enough for him to claim the child as his dependent.[1]

Background

Gary and Sandra Scalone are married and live in Rochester, New York: They have one child of their own, A.S., and one, N.S.,[2] from Gary's earlier marriage to Denise Scalone. This case is about Gary's entitlement to the dependency exemption and child tax credit for N.S. for tax year 2006. In 2001, Gary and Denise signed a separation agreement that gave them "joint custody" of N.S., but fixed N.S.'s "primary residence" with Denise. The agreement also says that Gary "shall

---

[1] This case was tried under Internal Revenue Code section 7463 and was jointly submitted under Rule 122. Since the Scalones chose small-case status, the decision isn't reviewable by any other court, and this opinion shouldn't be cited as precedent. (Unless we say otherwise, all section references are to the Internal Revenue Code in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.)

[2] We refer to minor children by their initials. Rule 27(a)(3).

be entitled to claim" N.S. as a dependent for tax purposes "[f]or calendar year 2000 and for any taxable years henceforth." And Denise promised to sign a declaration "on forms acceptable to the Internal Revenue Service" that she would not claim N.S. as a dependent if Gary kept current on his child support. (We also note that Gary agreed to pay child support in an amount that exceeded what New York law required.)

The form that's most "acceptable to the Internal Revenue Service" is Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents. A taxpayer who uses this form is unlikely to be hassled by the IRS, and Gary did try to get his ex to fill it out. She refused, even though Gary was current on his support payments. The Scalones, understandably feeling entitled to do so, claimed N.S. as a dependent on their 2006 income tax return. Instead of a Form 8332, however, they attached a signed copy of the separation agreement to their tax return. The Commissioner disallowed the dependency exemption and the child tax credit for N.S. and sent the Scalones a notice of deficiency.[3] The case was headed for trial in

---

[3] In the notice of deficiency the Commissioner remarkably refused the Scalones the same exemption and credit for A.S.--their own child who lived with them throughout 2006. The Commissioner has since wisely decided to concede this issue.

Buffalo when the Scalones and the Commissioner agreed to submit it for decision under Rule 122.

## Discussion

The parties agree that the entire fight comes down to whether N.S. is the Scalones' "dependent" child.[4] If she is, then the Scalones get to claim her as a dependent and win a child tax credit too. See sec. 24(c) (linking the credit for a "qualifying child" to the child's status under section 152). But "dependent" is one of those English words that the Code tortures into having a very specific meaning: A "dependent" child in tax law means a child who gets more than half her support from a taxpayer with whom she lives for more than half of the year. See sec. 152(a)(1), (c)(1). The general rule for children of divorced parents is that the "custodial" parent gets to claim them as dependents, but the divorce decree or separation agreement can say otherwise. Sec. 1.152-4(c), Income Tax Regs. Divorcing parents can either agree who has "custody" for this purpose, or leave it to a judge to count the number of days each year that the child is in each parent's care and treat the one who has physical custody for the greater portion of the calendar year as having "custody". Sec. 1.152-4(b), Income Tax Regs.

---

[4] Because we decide this case on a preponderance of the evidence, we don't need to address either party's arguments about shifting the burden of proof under section 7491.

We don't have to do that kind of math here because Gary and Denise had a separation agreement that said N.S.'s "primary residence" would be with Denise. That means Denise was N.S.'s custodial parent.

That also means there's no hope for the Scalones under the general rule. But the rule has exceptions, and the Scalones point us to section 152(e)(2), which applies where the custodial parent signs a written form, called a declaration, in which she states that she won't claim that child as a dependent and the noncustodial parent then attaches the executed declaration to his tax return for that year. See sec. 152(e)(2). Form 8332 is the IRS form most people use to make this declaration, but a taxpayer can use any statement that "conform[s] to the substance" of Form 8332. See sec. 1.152-4T(a), Q&A-3, Temporary Income Tax Regs., 49 Fed. Reg. 34459 (Aug. 31, 1984). The Scalones rely on this exception.

Whether something conforms to the substance of Form 8332 is not always an easy question. When the Scalones filed their taxes, a Form 8332 required

- the name of the noncustodial parent;

- the noncustodial parent's Social Security number;

- the name of the child (or children);

- the tax year (or years) the exemption was being released for;

- the custodial parent's Social Security number;

- the signature of the custodial parent; and

- the date of the custodial parent's signature.

What makes this part of tax law complicated is that some of the information that's listed on the Form 8332 is absolutely required, and some is just helpful to the IRS in processing the return.

Our Court has emphasized, for example, the importance of the custodial parent's signature on this declaration. See, e.g., Miller v. Commissioner, 114 T.C. 184, 191-94 (2000), aff'd on another ground sub nom. Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002); see also Himes v. Commissioner, T.C. Memo. 2010-97 ("Ms. Wyke's failure to sign * * * *is the controlling factor* in this case. The signature of the custodial parent releasing the claim to the dependent exemption is a statutory requirement that cannot be waived." (Emphasis added.)). The Code itself says the custodial parent has to "sign[] a written declaration," see sec. 152(e)(2), and it's not up to judges to rewrite the law.

Both Gary and Denise, however, did sign the separation agreement, and Gary correctly points out that almost all the information on a Form 8332 is in that agreement--the only things missing are his and Denise's Social Security numbers. That Gary's number isn't in the agreement isn't a problem--his number is elsewhere on the return--but the absence of his ex's number may be a problem.

The first question we have to answer, then, is whether the custodial parent's Social Security number (like her signature) is absolutely required information or whether it's just helpful information that shouldn't get in the way of Gary's right to claim N.S. as a dependent. The Scalones aren't the first couple to be in this fix, and we can look to other cases. Those cases show that we have accepted declarations that lack a parent's Social Security number(s). See Boltinghouse v. Commissioner, T.C. Memo. 2003-134; Bramante v. Commissioner, T.C. Memo. 2002-228 ("Neither the statute nor the regulations require that the release contain the custodial parent's Social Security number").

But the Commissioner points us to two cases as well and says that his cases prove that the separation agreement isn't good enough because it doesn't have Gary and Denise's Social Security numbers. In Nixon v. Commissioner, T.C. Memo. 2011-249, 2011 Tax Ct. Memo LEXIS 245, at *2-*3, a father claimed dependency exemptions for his two minor children even though he didn't attach a signed Form 8332 or other signed declaration to his income tax return. Instead, he gave the Commissioner an unsigned Form 8332 and letters explaining that his ex-wife refused to sign the form despite his being entitled to the exemption. See id. at *3. Not surprisingly, we held that none of these documents sufficed, and the problem

was not just a missing Social Security number; it was the lack of anything signed by the ex-wife. See id. at *6-*7.

The second case that the Commissioner relies on, Gessic v. Commissioner, T.C. Memo. 2010-88, 2010 Tax Ct. Memo LEXIS 93, is also quite different from the Scalones' situation. In Gessic, the taxpayer father attached a single, initialed page from his separation agreement[5] that also failed to include Social Security numbers. See id. at *7. This separation agreement also didn't include the names of the parents' minor children, and although the father's right to claim his children as dependents was conditioned on his staying current on support payments, it was *also* conditioned on his ex's not returning to full-time employment paying her more than $20,000 per year. See id. at *2.

We held that Gessic was different from Boltinghouse, and that the attached page from the separation agreement didn't comply with section 152(e)(2). See id. at *7-*8. The problem wasn't missing Social Security numbers, but our inability to figure out how to determine "what tax years * * * [the waiver contained in the agreement was] applicable * * * [to]" because of the agreement's requirement that the ex-wife not be employed and earning more than $20,000 per year. Id. at *8.

_____

[5] The Gessics gave the Commissioner a complete copy before trial. It's not clear from the record if the custodial parent signed this copy. See Gessic v. Commissioner, T.C. Memo. 2010-88, 2010 Tax Ct. Memo LEXIS 93, at *1.

The Scalones' attachment omits Social Security numbers, but includes names and dates, and has nothing like the income threshold of the separation agreement in Gessic.

We found a third case that the Commissioner didn't point us to. In Briscoe v. Commissioner, T.C. Memo. 2011-165, 2011 Tax Ct. Memo LEXIS 162, at *7, we held that a valid child-support order granting the taxpayer father the dependency exemption for his minor child and signed by his ex-wife didn't comply with section 152(e)(2). Like the separation agreement in this case, the order lacked the custodial parent's Social Security number. See id. at *7. But unlike the separation agreement in this case, the order also didn't fully state the years to which it applied. See id.

This turns out to be very important. The separation agreement here states that Gary "shall" receive the dependency exemption "[f]or calendar year 2000 and for any taxable years henceforth." With this language, Denise was giving Gary the right to claim N.S. as a dependent for all years from 2000 into the future. The applicable regulations specifically allow this kind of general release. See sec. 1.152-4T, Q&A-4, Temporary Income Tax Regs., supra (release may be "for all future years"). We also specifically find that this phrase is Denise's unconditional promise *not* to claim N.S. as a dependent.

As the Scalones point out, our facts are much closer to those in Boltinghouse: Boltinghouse and his ex-wife signed a separation agreement that gave him the dependency exemption for one of their two minor daughters. See Boltinghouse, T.C. Memo. 2003-134, 2003 Tax Ct. Memo LEXIS 134, at *2. Like the agreement here, it omitted the parents' Social Security numbers. See id. at *2, *6. The Commissioner argued that these omissions, and the fact that the couple's later divorce decree didn't specifically incorporate the separation agreement, meant that Boltinghouse couldn't rely on the separation agreement to support his claim to the dependency exemption for his child. See id. at *6.

We agreed, however, with Boltinghouse. We first observed that the Code and regulations didn't require a custodial parent's waiver to be incorporated into the decree. See id. at *6. But more importantly, we found that the agreement, while not listing every year that it applied to, "unambiguously stated that it was to apply to all future years," distinguishing it from cases involving a release for "all future years" that didn't specify how to treat the year it was executed. See id. at *7-*9. And we held that it didn't matter whose Social Security number was missing. See id. at *10.

Here, there's no ambiguity about what year Gary was entitled to claim N.S. as a dependent: The separation agreement is unequivocal that "[f]or calendar year

2000 and for any taxable years henceforth, the Father *shall* be entitled to claim the minor child, [N.S.], as a dependent exemption for purposes of income tax returns." (Emphasis added.)  Gary's entitlement is absolute:  The only omission on the agreement was the parents' Social Security numbers and even those the parties later stipulated.  As we noted in <u>Boltinghouse</u> and <u>Bramante</u>, and consistent with the plain language of section 152(e)(2), this oversight isn't fatal to the separation agreement's serving as the required declaration.

The Commissioner has a second argument, though.  He argues that even if the absence of the parents' Social Security numbers doesn't sink the Scalones, "conditional" language in the separation agreement should.  There is conditional language, kind of.  But we disagree that it's important.  The language the Commissioner points to states that

> Wife agrees to sign a written declaration on forms acceptable to the Internal Revenue Service that she will not claim the child as an income tax dependent exemption for any taxable year commencing calendar year 2000, provided that for the applicable calendar year she continues to receive child support payments as agreed from the Husband and such payments are current as of December 31 of the applicable tax year.  The Wife further agrees to attach the declaration form required by the applicable rules and regulations of the Internal Revenue Code to *her* income tax return. [Emphasis added.]

This provision mentions a "written declaration"--clearly a Form 8332.  And the Commissioner is correct that it has a *quid pro quo*.  But it's a very odd one:  if Gary

is current with support, Denise promises to complete a Form 8332 and attach it to *her* tax return--something that would have no effect on Gary's right to claim N.S. as a dependent on *his* tax return, which she gave away in the preceding sentence of the agreement. It would sure have been a lot easier for Gary if Denise had given him a signed Form 8332, but as we pointed out earlier, the Code doesn't *require* it.

We apply the agreement as it stands, find that N.S. was the Scalones' "qualifying child" for 2006, and hold that the Scalones are entitled to a dependency exemption, and a child credit, for N.S that year.

<u>Decision will be entered</u>

<u>for petitioners</u>.